MARTIN v. BOWIE.

1.  SERVICE OF SUMMONS—COLLATERAL ATTACK.—In action for the recovery of real property purchased by plaintiffs at an execution sale, the defendants, strangers to the action under which the sale was made, cannot question the sufficiency of the acceptance of service of the summons by the judgment debtor in the original action.  If necessary, the court would presume an appearance that cured any defect in service.

2.  IMPROPER VENUE—WAIVER—COLLATERAL ATTACK.—The record of a judgment not disclosing the fact that the defendant was sued in the wrong county, the allegation of such fact could not form the basis of a collateral attack upon the judgment.  And such defendant having made no such objection by plea or appeal, it is doubtful whether any person could ever afterwards make it; it certainly could not avail strangers in a collateral attack on the judgment.

3.  A LEVY in proper form, endorsed by the sheriff on an execution, is valid without his entry on the land levied; and a sale under a second levy insufficiently endorsed is valid by reference to the first levy, and because defects in levies may be cured.

4.  DEED—PROOF OF EXECUTION.—A deed is not proved by testimony of one of the subscribing witnesses to his own signature and to that of the other witness.

5.  IBID.—IBID.—LOST PAPERS.—After proof of the death of both subscribing witnesses to a deed, any person, including the grantee, may make proof of the due execution of the deed.

6.  PAROL EVIDENCE—POSSESSION OF LAND.—Parol evidence of a sale of land, and of the contents of deeds alleged to be lost, may be received where offered only for the purpose of showing possession.

7.  PROOF OF LOSS—TRIAL JUDGE.—*It seems* that it is for the trial judge to determine what proof of the loss of deeds is sufficient to authorize testimony as to their contents.

8.  EVIDENCE—NON-SUIT.—Where there is some evidence to sustain the plain-

tiff's claim, the trial judge cannot order a non-suit on the ground that the testimony is insufficient.

9. RECOVERY OF REAL PROPERTY—PROOF OF TITLE.—In action for the recovery of land, plaintiff must make out his claim by a chain of paper title back to a grant, or such possession as will warrant a presumption of title, or both combined—partly paper title and partly possession.

10. ANCIENT DEEDS—POSSESSION.—Ancient deeds and plats are admissible in evidence without proof when produced by the parties who are in the possession of the land.

11. AN EXCEPTION overruled which was based upon a manifest misconstruction of the judge's charge as to the fact of damages.

12. HOMESTEAD—JUDGMENT—LIENS—PURCHASER.—A judgment has no lien on so much of the judgment debtor's land as he is entitled to the exemption of under the homestead laws; and a purchaser of this land under such judgment acquires no title to so much as may be claimed as homestead, whether laid off or not, and whether still retained by the debtor or conveyed to a third person.

13. IBID.—IBID.—IBID.—The purchaser in such case, where the land exceeds one thousand dollars in value, does not acquire the entire tract subject to the claim of homestead, nor as tenant in common with the debtor or the debtor's grantee, but he acquires absolutely and only so much as lies outside of the homestead limits when admeasured.

14. IBID.—IBID.—IBID.—PRACTICE.—As the Court of Common Pleas has no original jurisdiction in the assignment of homestead, the proper practice is for the court to require the party asserting the homestead right to proceed to have it admeasured or else be barred from asserting it.

Before WALLACE, J., Abbeville, January, 1891.

Action by Sarah J. Martin and A. T. Armstrong against C. F. Bowie, J. A. Bowie, and F. A. Spellman, for the recovery of a tract of land, commenced September 7, 1889. One of the deeds in plaintiffs' chain of title was a deed from J. A. Williams to J. N. Carwile, and the grantee was sworn as a witness, and testified that both witnesses to the deed were dead, and that he saw both of them sign their names thereto as witnesses. He further testified that he had sold the same land to D. S. Branyan, in September, 1874, who then took possession.

At the close of all of plaintiff's testimony defendants moved for a nonsuit, on the ground of uncertainty in the endorsement of the second levy. This was "overruled, on the ground that the second levy relates to the first levy." The motion was

urged on the further ground of insufficiency of evidence as to the possession of Branyan. This ground was also overruled, the court saying: "The very phrase used by counsel is fatal to his motion, 'that the testimony is insufficient.' You admit that there is testimony, and that it is insufficient, and if there is testimony, it must go to the jury."

The jury were charged as follows:

*Mr. Foreman and gentlemen:* The defendants ask me to charge you, first: "Where plaintiff never had actual possession, he can recover only upon the strength of his own title, and not on weakness of the defendants' title. He must show complete chain back to original grant, or possession long enough to presume a grant or to give title. I charge you that. The plaintiff has brought his action to recover a tract of land as described in the complaint. He says he has title, but the defendant is in possession of it, and he demands from you a verdict that he is entitled to the land. The effect of that is to throw upon the plaintiff to show that he has good title, and according to the request here he must recover on the strength of his title, and in order to recover he must show complete and absolute title before he can claim a verdict at your hands.

Well, that being his duty before he can claim a verdict, what must he do? He must show a grant from the State, and from that grant he must trace the title (deeds) down to himself, and if he does that he would be entitled to recover a verdict at your hands. If he cannot do that, he may, under the law, submit such proof as to raise a conclusive presumption that title of that nature once existed, and is now in him. How can he do that? He has no grant, but the plaintiff claims he has got that which is equivalent in law to a grant. He says, that away back in 1816, Henry Branyan was in possession, and willed it to his son. They don't go behind him, but they show that he was in possession then, and that he continued in possession down until the will was made. If it is shown to the satisfaction of the jury, that any one has been in possession of land for twenty years, holding it adversely and claiming it as his own, then the law raises the conclusive presumption that he entered it under grant, and in legal contemplation he has a grant. Possession may be

connected; one may hold five years, another five years, and so on, until the twenty years has run out. These successive holdings make out presumption of a grant, just as if one man was holding it for twenty years. If one man holds it five years and sells to another, and he to another, and so on, until the twenty years has run out, then the law presumes deeds. So far as the question in issue here is concerned, I don't know that I need say anything more, except as to how title is made out. If by the preponderance of testimony it is shown that the possession was con·nected, and extended over a period of twenty years, then the law presumes a grant, because the law presumes that originally he entered under a grant.

If one enters upon the possession of land, and stays there for ten years, holding and claiming the land as his own, then, although he was originally a trespasser, the title can not hold against him. If he holds adversely for ten years, he cannot be turned out; but if he and those holding under him hold ten years more, the legal presumption is that he entered rightfully. So you can apply the proof of title to this case, and if you think that the plaintiff has shown title, he is entitled to a verdict, and if not, he is not entitled to a verdict.

Now, the defendants attack plaintiffs' title, upon the ground that it has been made to appear in the testimony that the defendant, Branyan, had homestead in the land. Well, you are to say by the testimony whether or not he did have homestead in the land. A head of a family and a resident of this State is entitled, you know, to have laid off to him $1,000 in real property, and $500 in personal property, and if it is sold under levy the purchaser takes nothing, because on a homestead the judgment is no lien. There was no homestead laid off here. It was, therefore, an inchoate right. Nobody says that the land is worth so little as $1,000; so the land is worth more than the homestead. And right here a question arises which has not been decided in this State. What right has a judgment creditor, in regard to real estate, when the land is worth more than $1,000 and the homestead has not been laid off? When land has been levied on under those circumstances, the purchaser takes the whole tract subject to homestead, just as he takes a tract of

14—37

land subject to dower. The right is inchoate where it is unde-
fined. It is like dower; the purchaser takes the whole land
subject to dower.

As to the question of damages; if you think that the plaintiff
is entitled to recover, it is for you to say what the amount will
be. Nor can I concede the argument of the counsel for the
defence, that a joint tenant is not entitled to account to his co-
tenant for profits of joint land, if he don't work more than his
share. Where land is held in joint tenancy, each tenant owns
it all; and if it is 500 acres, and one share would be 250 acres
on a division, and he cultivate 100 acres, his co-tenant would
be entitled to his share of the proceeds from that 100 acres.

The defendant asks me to charge you, "That the plaintiff not
being entitled to recover Branyan's homestead in this land,
unless the jury are satisfied from the evidence that the defend-
ant cultivated more of the land than the homestead, plaintiffs
are entitled to recover no rents; one tenant in common cannot
recover from another more than his share of the rents." Well,
I charge you that much, but his share of the rents is not mea-
sured by the fact that his co-tenant only cultivated his share of
the land. That is not the rule.

Also, "If the jury believe from the evidence that the judgment
debtor, D. S. Branyan, was the head of a family, and had no
other land than the land in controversy here, he was entitled
to his homestead exemption therein, which was not the subject
of levy and sale under plaintiffs' execution. The sheriff could
only levy to sell and convey to plaintiffs leviable interest in the
land, to wit, the land in excess of the homestead." Well, I
charge you that in connection with what I have already charged.
So, if you think on the law and the evidence that the plaintiff
is entitled to recover, you say: "We find for the plaintiff the
land in dispute," adding the sum you find for damages in
words and not figures. If you do not think that the plaintiff
has made out a title, then you will say: "We find for the de-
fendant." Take the record.

The jury rendered the following verdict: "We find for the
plaintiffs the land in dispute, and damages to the amount of
three hundred dollars," and judgment was entered thereon.

Defendants appealed on the following grounds:

1. Because his honor, the presiding judge, erred in overruling defendants' objections to the Martin and Armstrong judgments, and to their being admitted in evidence, the acceptances of service endorsed on the summons in the actions in which said judgments were obtained not showing the place of service, and there being no proof of the acceptances of service.

2. Because his honor, the presiding judge, refused to allow the defendants to show on cross-examination of J. F. C. DuPre (the sheriff who made the sale) how the levy was made, and that the sheriff did not go upon the land, but merely placed the endorsement upon the execution at his office.

3. Because the defendants were not allowed to show on cross-examination of plaintiffs' witnesses, that D. S. Branyan resided in Anderson County at the time he was sued in Abbeville County by the said Sarah J. Martin, administratrix, and A. T. Armstrong.

4. Because his honor, the Circuit Judge, erred in not holding said judgments of Sarah J. Martin, administratrix, against D. S. Branyan, and A. T. Armstrong against D. S. Branyan, absolutely void, rather than voidable, the same having been obtained in Abbeville County when the defendant Branyan resided in Anderson County; and in not holding that as said judgments were absolute nullities, they could be attacked by defendants when set up as a part of plaintiffs' chain of title.

5. Because the Circuit Judge erred in holding that where a jurisdictional infirmity does not appear on the face of the record, the judgment is not void.

6. Because his honor, the Circuit Judge, erred in admitting in evidence the deed of J. F. C. DuPre, sheriff, to Sarah J. Martin and A. T. Armstrong, the same not having been properly proven.

7. Because his honor, the presiding judge, erred in allowing J. N. Carwile, a grantee, to prove the execution of a deed to himself.

8. Because his honor, the Circuit Judge, erred in allowing J. N. Carwile to testify that he sold the 110-acre tract of land to

D. S. Branyan, there being no proof that the deed was lost, and the deed would certainly have been the highest evidence.

9. Because his honor, the Circuit Judge, erred in allowing proof of contents of the deeds from T. W. Branyan to D. S. Branyan and from J. N. Carwile to D. S. Branyan, the loss of which had not been proven.

10. Because his honor, the presiding judge, erred—after excluding certified copies of the said deeds to D. S. Branyan to the land in dispute, upon the ground that only one of the plaintiffs, Sarah J. Martin, had made affidavit of the loss of the original deeds—in permitting plaintiffs to supply such proof by the sole testimony of the said Sarah J. Martin as to the existence and loss of said original deeds.

11. Because the certified copies of the deeds was the higher evidence, and evidence of a secondary nature could not be received, upon the very ground which excluded the higher; and his honor, the Circuit Judge, erred in admitting any evidence as to the contents of said deeds.

12. Because his honor, the presiding judge, erred in refusing the motion for non suit.

13. Because his honor erred in refusing the motion for nonsuit, based upon the ground that no levy was proven under either execution—that the endorsement, "Second levy, August 9th, 1888, by the sheriff," is void for uncertainty, in that the property levied is not specified on the executions nor on any memorandum attached to either execution.

14. Because his honor, the presiding judge, refused to charge, as requested by the defendants, "That title must be shown by an original grant and successive conveyances to the plaintiff, or plaintiffs must show such possession as presumes a grant; and where he relies upon possession to presume a grant, there must be twenty years' possession. That plaintiff must rely either upon title or possession, and not upon both, to make up this possession. If he claims under deeds proved, there is no room for presumption, and a plaintiff who claims under one who, the proof shows, claimed under a deed, must show a conveyance or succession of conveyances to him, or must show twenty years' possession in himself, or himself, together with the intermedi-

ate holders of the land through whom he claims, to show title by presumption of a grant.

15. Because his honor, the presiding judge, erred in refusing to charge, as requested by the defendants, "That when plaintiff proves that there is a deed or deeds in existence, he must prove his title by deed, and cannot rely on presumption, as there is no room for presuming title by possession, when the existence of deeds is shown by the proof."

16. Because his honor, the Circuit Judge, erred in refusing to charge, as requested by defendants, "That the plaintiffs not being entitled to recover Branyan's homestead in this land, unless the jury are satisfied from the evidence that the defendants cultivated more of the land than the homestead, plaintiffs are entitled to recover no rents; one tenant in common cannot recover from another more than his share of the rents."

17. Because his honor, the presiding judge, erred in charging the jury that when land has been levied upon worth more than $1,000, and the homestead has not been laid off, the purchaser takes the whole tract subject to homestead, just as he takes a tract of land subject to dower, such right being inchoate where it is undefined; and instructed the jury, if they found for the plaintiffs, to find for the land in dispute; when he should have directed the jury that, if they found the land was worth more than $1,000, and the judgment debtor, as the head of a family, and having no other real property, had a homestead therein, they could only find for the plaintiffs the excess of the land over and above the homestead.

18. Because the homestead was exempt from levy and sale, and such charge of his honor was in contradiction of his charge that the debtor's "homestead exemption was not the subject of levy and sale under plaintiffs' execution. That the sheriff could only levy, and sell, and convey to plantiffs the leviable interest in the land, to wit, the land in excess of the homestead," and was in plain contravention of defendants' right to have plaintiffs restricted, if entitled to recover at all, to that portion of the land they had bought at sheriff's sale, to wit, the excess over and above the homestead.

19. Because, it is respectfully submitted, the judgment debt-

or's right of homestead was not an inchoate right, but an absolute exemption from levy and sale, whether ascertained and laid off by boundaries or not, and his honor erred in charging the jury that it was an inchoate right.

20. Because if in any point of view the verdict of the jury could be regarded as a denial of the debtor's right of homestead in the land, then, it is respectfully submitted, that it is unsupported by a scintilla of evidence; the proof, and the only proof, being that he was the head of a family, and owned no other land at the time of the sheriff's sale, and that the land was sold by the sheriff subject to the homestead exemption.

21. Because his honor, the Circuit Judge, erred in refusing the motion for a new trial, based on the ground that the evidence conclusively showed that the judgment debtor was entitled to homestead in this land, and the jury could not possibly find otherwise from the evidence; and his honor misled the jury by telling them that homestead was merely an inchoate right like dower.

22. Because his honor erred in admitting in evidence as ancient papers certain deeds and plats—deed of Nimrod Williams to J. C. Williams, and plats dated 1816 and 1841—without requiring proof showing that they were in proper custody.

23. Because his honor erred in charging the jury, "If you find on the law and the evidence that the plaintiff is entitled to recover, you say, 'we find for the plaintiff the land in dispute,' adding the sum you find for damages in words and not figures," thereby instructing the jury to find damages.

*Messrs. B. F. Whitner, DeBruhl & Bradley,* and *Geo. E. Prince,* for appellants.

*Messrs. Benet & Cason,* contra.

September 13, 1892.  The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.  This was an action to recover possession of a tract of land containing 200 acres, more or less, alleged to be in the possession of the defendants.  In their answer, the defendants admit their possession of the land, but

deny all the other allegations of the complaint. It was, therefore, necessary for the plaintiffs to establish their title to the land in dispute. This they undertook to do by offering testimony tending to show that the land in question had been sold at sheriff's sale under executions against one D. S. Branyan, an alleged former owner, and bought by the plaintiffs. This testimony consisted, first, of a judgment entered on the 20th of February, 1885, in favor of the plaintiff Martin against said Branyan, upon which execution was issued the same day. Second, a judgment entered on the same day in favor of the plaintiff Armstrong against said Branyan, upon which, also, execution was issued the same day. Both of these executions were lodged in the sheriff's office on the 23d February, 1885, and the following endorsements appear upon each of the executions: "Under this execution I have this day levied on all the interest, right, and title of D. S. Branyan in the following real estate, to wit: two hundred acres, more or less, bounded by lands of Marshall Bigby, J. A. Bigby, Robert McAdams, and others. (Signed) J. F. C. DuPre, sheriff A. C., Nov. 12th, 1885. 2d levy August 9, 1888, by the sheriff." The land in question was duly advertised by the sheriff for sale on the salesday in September, 1888, and on that day was offered for sale and bid off by the plaintiffs—the sheriff first giving the following notice, which was entered in his private sales book: "Sold subject to claim of homestead, and any other claim of (*sic*) said Branyan may have"—and titles made to them by Sheriff DuPre.

It is stated in the "Case" that "The following papers were offered in evidence by the plaintiffs and allowed by the court:" 1st. Sheriff DuPre's deed to the plaintiffs for the land in dispute. 2d. Deed from J. C. Williams to J. N. Carwile, dated 27th March, 1862, for a tract of land described by metes and bounds, containing 110 acres, more or less. 3d. A deed from Nimrod Williams to J. C. Williams, dated 13th July, 1860, for the same land, containing a recital that it was land devised to said grantor by the will of his father, A. Williams. 4th. Will of Arthur Williams, devising same tract to his son Nimrod, which will was admitted to probate 21st May, 1860. 5th. Plat

of land made for Henry Branyan August 1st, 1816, by Josiah Kilgore, surveyor general, covering 118 acres.   6th. Plat of same land, except that the number of acres is stated to be 129, made by Joseph Cox, D. S., 30th October, 1841, for Thomas W. Branyan.  These papers, with certain parol evidence here-after to be noted, were offered for the purpose of showing title in said D. S. Branyan, the claim of the plaintiffs being, as we understand it, that the tract of land in dispute was made up of the two tracts mentioned in said papers.   Parol evidence was offered by plaintiffs tending to show possession by said Arthur Williams and those claiming under him, for sufficient length of time to give title to the tract alleged to have been derived from said Williams, and similar evidence as to what may be termed the Branyan tract.   Various exceptions to the competency of testimony were submitted during the progress of the trial; but owing to the imperfect manner in which the testimony was taken, or the imperfect manner in which it is set out in the "Case," we have found no small difficulty in ascertaining precisely what were the rulings of the Circuit Judge.

At the close of the testimony for the plaintiffs, one of the counsel for defendants moved for a non-suit, upon the ground that no levy was proved under either execution; which motion being overruled, another one of the counsel for the defence moved for a non-suit, "on the ground of the insufficiency of the evidence as to the possession of Branyan," which was like-wise overruled.  No testimony being offered on the part of the defendants, after argument of counsel, and after certain re-quests to charge were submitted, which being sufficiently set forth in the exceptions need not be repeated here, the Circuit Judge charged the jury as set out in the "Case," which charge, together with the exceptions served for the purpose of this appeal, should be incorporated in the report of this case.

The first, third, fourth, and fifth exceptions impute error to the Circuit Judge in refusing to allow the defendants to intro-duce evidence tending to show that the judgments under which the land in question was sold, and through which plaintiffs claim, were void for want of jurisdiction, and in holding that

said judgments were not void. The validity of these judgments is sought to be impeached upon two grounds: 1st. Because the acceptance of service, which is in the same form in both of the cases, was not in the proper form, and was not sufficient to show that the court had ever acquired jurisdiction of the person of the defendant. 2d. Because the defendant in said cases being a resident of Anderson County at the time he was sued, the court in Abbeville County could not take jurisdiction of said cases. The acceptance of service is in the following form: "I hereby accept due and legal service of a copy of the within summons and complaint. Dec. 23, 1884. D. S. Branyan." And the objection seems to be of a two-fold character—first, that the written admission does not state the *place* of service, as required by section 159 of the Code, and, second, that the record contains no evidence that the signature of the defendant Branyan was genuine.

It will be observed that these objections are made, not by the judgment debtor Branyan, who, for aught that appears, has made, and still makes, no objection, but by third persons, who, so far as appears, are entire strangers. It seems to us that the case of *Darby* v. *Shannon*, 19 S. C., 526, is conclusive; for there a similar objection to a judgment was made by strangers, and it was held that the objection could not be sustained. In that case, the following language from Freeman on Judgments is quoted with approval by Mr. Justice McGowan: "Every litigant, if an adult, is presumed to understand his own interests, and to be fully competent to protect them in the courts. He has the right to waive all irregularities in proceedings by which he is affected, and is entitled to exclusively decide upon the propriety of such waiver. To allow disinterested third persons to interfere in his behalf, and to undertake the management of his business, according to their judgment, would create intolerable confusion and annoyance, and produce no desirable result. To permit third persons to become interested after judgment, and overturn adjudications to which the original parties made no objections, would encourage litigation, and disturb the repose beneficial to society." And again, from the same distinguished author: "There is a

15—37

difference between a want of jurisdiction and a defect in ob-
taining jurisdiction. * * * In case of an attempted service
of process, the presumption exists that the court considered
and determined the question whether the acts done were suffi-
cient or insufficient. If so, the conclusion reached by the
court, being derived from hearing and deliberating upon a
matter which, by law, it was authorized to hear and decide,
although erroneous is not void." But, in addition to this, the
court would, if necessary, presume that the defendant had, by
his voluntary appearance, cured any defect in the service.
Code, § 160.

As to so much of these exceptions as impute error to the
Circuit Judge in refusing to receive testimony tending to show
that Branyan was a resident of Anderson County, and,
therefore, the court sitting for Abbeville County had no
jurisdiction of the cases in which the judgments in ques-
tion were recovered, we think it clear that they cannot be sus-
tained. The fact sought to be proved did not appear upon the
records, and, therefore, it could not form the basis of a collateral
attack upon the judgments, such as is attempted here. *Turner*
v. *Malone*, 24 S. C., 398. If the fact be as claimed, then it
constituted a good defence to the action in which the judg-
ments were recovered, and should then have been interposed,
or at least by appeal from those judgments, as in *Ware* v. *Hen-
derson*, 25 S. C., 385. Such a defence not having been inter-
posed at the proper time, to say the least of it, it is very doubt-
ful whether it could now be entertained in any mode of pro-
ceeding, instituted by any person. *Bleckley, Brown, & Fret-
well* v. *Branyan*, 28 S. C., at pages 450, 451, and the authorities
there cited. It is quite certain, however, that it could not avail
the defendants, who, so far as appears, are entire strangers, in
this attempted collateral attack upon the judgments.

The second and thirteenth exceptions question the sufficiency
of the levy, and the refusal of the Circuit Judge to receive tes-
timony tending to show that the sheriff did not go upon
the land for the purpose of making the levy, but merely
placed the endorsement on the executions, which is
copied in our statement of the case, while in his office. We

know of no law which requires that the sheriff shall actually go upon the land for the purpose of making a levy, and the requirements of section 1985 of the General Statutes, were fully complied with in making the first levy, to which the sale may be referred. But even if there were defects in the levy, it could not avail defendants, as they might be cured. *Sartor* v. *McJunkin*, 8 Rich., 451. See, also, *Adickes* v. *Lowry*, 12 S. C., 97, as to the right to sell under first levy.

The sixth exception imputes error to the Circuit Judge in receiving in evidence the deed from DuPre, sheriff, to the plaintiffs without proper proof of its execution. The only testimony as to the execution of this deed was that of Thomas P. Cothran, Esq., whose testimony is set out in the "Case" as follows: "Do you see your name upon that paper anywhere (handing paper)? Yes, sir. How does it appear there? As one of the subscribing witnesses. What is it? It seems to be a deed from J. F. C. DuPre to Sarah J. Martin and A. T. Armstrong, conveying a tract of 200 acres of land in Abbeville County, bounded by, &c. That is my signature, but I don't recollect anything else. You saw Mr. White sign it? I recognize that as his signature, and swear that to be his." This is all the testimony which we can find as to the execution of that deed; and it seems to us to be very informal and incomplete. The witness does not say that he saw the paper executed by the person who *seemed* to be the grantor, nor that it was executed in the presence of the two subscribing witnesses; and he does not even prove the handwriting of the alleged grantor; for while he does say that "*it seems* to be a deed from J. F. C. DuPre," &c., that is saying no more than what an entire stranger to DuPre might say from looking at the paper, and is very far from saying that it was executed by DuPre. While it may be quite true, as intimated in *Little* v. *White*, 29 S. C., at page 173, that the execution of a deed may be proved by one of the subscribing witnesses, where such witness can prove all the facts essential to the legal execution of the deed, yet where such witness simply proves his own signature and that of the other subscribing witness, it cannot be

said that such proof is sufficient. This exception must, therefore, be sustained.

The seventh exception alleges error in permitting the witness, J. N. Carwile, to prove the execution of the deed from J. C. Williams to himself. Inasmuch as it was first proved that both of the subscribing witnesses to that deed were dead, we see no error in allowing the proof of the execution of the deed by any other person who knew the fact. If the subscribing witnesses, or either of them, could have been produced, then they should have been examined; but they being dead, we are unable to see any reason why the grantee, or any person who knew the fact, that the deed had been duly executed, should not be permitted to do so.

The eighth exception imputes error to the Circuit Judge in permitting the witness, Carwile, to prove that he had sold the 110-acre tract to D. S. Branyan in September, 1874. While it is quite true that the best evidence of the transfer of the title would have been the deed by which the transfer was made, yet the evidence objected to would be competent to show a transfer of the possession; and such seems to have been the view with which it was received.

The ninth, tenth, and eleventh exceptions raise the question as to the admissibility of evidence as to the contents of certain alleged lost deeds, without first offering sufficient evidence of their loss. In the first place, the sufficiency of the proof of loss must necessarily be determined by the Circuit Judge; but, waiving this, we think all this evidence was received for the purpose of showing possession in D. S. Branyan, and not for the purpose of showing legal paper title in him; and for that purpose the evidence objected to was competent.

The twelfth exception, as to the refusal of the motions for non-suit, requires but little notice after what has been said. The first ground upon which the motion was rested has been disposed of by what we have said in reference to the levy. The second ground of the motion is conclusively answered by the remark of the Circuit Judge, for the question on a motion for non-suit is, not as to the sufficiency

of the evidence, but as to whether there is any testimony at all.

The fourteenth and fifteenth exceptions, based upon the refusal to charge defendants' second and third requests, cannot be sustained. A plaintiff in an action like this must make out his title, but this he may do either by introducing a regular chain of paper title, or by proof of such possession as will warrant the presumption of title. He may resort to either one or the other modes of proving title, and we see no reason, and know of no authority, which would prevent him from resorting to both combined. He may show such a length of possession in some previous owner as would warrant the presumption of a grant to such previous owner, and then he may show a regular chain of paper title down to himself. Even where one of the deeds, constituting a link in such chain, cannot be produced or cannot be proved, we see no reason why possession, if sufficiently proved, may not serve as a substitute for such deed.

The twenty-second exception, relating to certain muniments of title received as ancient papers, cannot be sustained, for it sufficiently appears that they came from those who were in possession of the land.

The twenty-third exception is based upon a manifest misconstruction of the judge's charge, and cannot, therefore, be sustained. We have no idea that the jury either put, or could properly have put, any such construction upon the language used by the judge, as is intimated in that exception.

It only remains for us to consider the sixteenth, seventeenth, eighteenth, nineteenth, twentieth, and twenty-first exceptions, all relating to the matter of the homestead. We do not propose to consider these exceptions *seriatim*, but simply to determine what we consider to be the law upon the subject, and to inquire whether the judge's charge is in conformity to such law.

In view of the express provision in the proviso to section 310 of the Code of Procedure, declaring that final judgments shall not, in any case, be a lien on the real property of

the judgment debtor exempt from attachment, levy, and sale, under the Constitution, and of the decisions of this court in the cases of *Cantrell* v. *Fowler*, 24 S. C., 424, and *Ketchin* v. *McCarley*, 26 *Id.*, 1. It cannot be doubted that the judgments under which the sheriff undertook to sell the land in question, never had a lien on so much thereof as might be included in the homestead of the judgment debtor; and this is so, whether such homestead had been actually laid off at the time of or before the sale or not. From this it follows necessarily that the sale of so much of the land as would be embraced within the homestead of the judgment debtor, was without authority, and the plaintiffs, who were the purchasers at such sale, acquired no title to so much of the land as would be included in the judgment debtor's homestead, if he was entitled to any. So, too, if Branyan, the judgment debtor, after the judgments were recovered, and before the sheriff's sale, had undertaken to convey the land to a third person, such conveyance, while subject to the lien of the judgments, so far as such portion of the land outside of the homestead was concerned, would not be subject to the lien of the judgments, so far as the homestead was concerned, for the reason that the judgments never were a lien upon such homestead; and hence the purchaser from Branyan (if any) would take a good title for so much of the land as might be included in the homestead.

If, then, Branyan was entitled to a homestead in the land when these judgments were recovered, and if, as we have seen, the judgments were not a lien upon the homestead, and if, as has been frequently held, a judgment debtor can sell or mortgage his homestead, then it follows that the judgments never could be a lien upon so much of the land as is included in the homestead; for as soon as it is sold and conveyed to a third person, it becomes his property, and as such, of course, not subject to the lien of judgments against another person. See *Cantrell* v. *Fowler, supra*, at page 428. The result of this necessarily is, that if Branyan was entitled to a homestead in the land in question at the time the judgments were recovered, the plaintiffs could acquire no title by the sheriff's sale under these judgments to so much of the land as would be included in

Branyan's homestead, whether the same had been laid off or not, and whether he had sold or still retained the same; and hence the plaintiffs, claiming, as they did, only through the sheriff's sale, were not entitled to recover the whole of the land, if the jury believed that Branyan was entitled to a homestead, but only so much of the land as would not be embraced within said homestead.

· We think, therefore, that the Circuit Judge erred in instructing the jury that, in a case like this, where the land was shown by the undisputed testimony to be worth more than one thousand dollars, and where the homestead has not been laid off, the plaintiffs would take "the whole tract subject to homestead, just as he takes a tract of land subject to dower." On the contrary, we think the jury should have been instructed that, under the circumstances mentioned, the plaintiffs could only recover so much of the land as may be found to be outside of the homestead, for to that alone could the plaintiffs acquire title to their purchase at sheriff's sale, if the jury believed that the right to homestead had been established.

We think, also, that there was error in the instructions as to the damages. It seems to us that it was a mistake to treat the case as that of a tenancy in common. Tenants in common are seized *per my* and *per tout*, each being entitled, before severance, to an interest in every inch of the soil; while here, if the right of homestead was established, the relations of the parties were very different. In such a case, the plaintiffs alone were entitled to every inch of the soil, outside of the homestead, without any right on the part of the defendants to any participation therein, while, on the other hand, the plaintiffs had no interest whatever in a single particle of the soil within the homestead limits. It seems to us, therefore, that the amount of damages to which the plaintiffs were entitled depended upon the inquiry whether the defendants occupied and used land outside of the homestead limits, and, if so, how much. Of course, we need not add, that if the jury believed that the right of homestead had not been established, the plaintiffs might, if they otherwise established their title, recover the

whole of the land, as well as such damages as may have been incurred by defendants' use of the same.

Under these views, a new trial becomes necessary; but inasmuch as the Court of Common Pleas has no original jurisdiction to assign or set off a homestead, which it seems to us will be necessary, provided the right of homestead is either conceded or established before any final judgment can be rendered, in remanding the case to the Circuit Court, provision should be made by that court, requiring the defendants who set up the right of homestead to have the same laid off by the proper authority within a time to be limited for that purpose, or otherwise that the right will be barred.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial, and with the instruction to that court to make provision as indicated for laying off the homestead, if the right to the same be allowed.