8623

TAYLOR v. STRAUSS.

TAXES—LIFE TENANT—REMAINDERMEN—TAX DEEDS.—The amount due for taxes is a debt due by the person listing the property for which he may be sued. A life tenant is required to assess the land in his possession as such and upon his default in paying taxes only his interest in the land can be sold under execution against him.

Before SPAIN, J., Sumter, November, 1912. Reversed.

Action by Maud O. Taylor *et al.* against Isaac Strauss and Taylor Goodman. Plaintiffs appeal on the following exceptions:

First. "Because his Honor erred in holding that section of the Revised Statutes of 1893 passed in A. D. 18   , was of such effect as that a sale of the land in this State for taxes and a deed to the purchaser made under such sale carried with it not only all right, title and interest of a life tenant but also all the right, title and interest of any remaindermen having a right to the title and possession of the property in question upon the termination of the life estate, the property in this case having been sold for taxes assessed against, and in the name of the life tenant.

Second. "Because his Honor erred in holding a ruling that the statute laws of this State were so altered and amended and subsequent to the decision of the Supreme Court on the point involved as announced in the case of Shell against Duncan, reported in volume 31, page      of the South Carolina Reports that under the sale of the land

for taxes in this case assessed against the life tenant in 1895 that such tax sale carried with it to the purchaser not only all right, title and interest in the property of the life tenant, but also the rights of the remaindermen in the land in question, some of whom were not born and could not be expected to pay taxes at that time.

Third. "Because his Honor erred in that he should have held that a common source of title having been shown in this case in that both that claimed by the plaintiffs and that claimed by the defendants were derived from William Keels who devised the tract of land in question to his son, J. L. Keels, for life and after the death of J. L. Keels to the children of J. L. Keels, the fact being disclosed that the defendant's title came through a tax sale of said land assessed against the defaulting taxpayer, J. L. Keels, who owned only a life interest in said land and having died since said sale the remaindermen under said will having now the better title to the land according to the proof and that the issue should have been submitted to the jury to determine who has the better title from such common source.

Fourth. "Because his Honor should have held that section 360 of the Revised Statutes of 1893 limiting the right to recover against a tax title must necessarily be construed with the previous sections of said statute which require taxes to be assessed in the name of the true owner, and, therefore, persons referred to in section 360 could only be such persons against whom the taxes were assessed or those claiming by, through or under them.

Fifth. "Because his Honor erred in granting the motion for nonsuit in this case in that such application of the statutes referred to would open the door to fraud and permit any life tenant to defeat the title of remaindermen by failure on his part to do his duty in paying taxes on the land assessed against him and his estate, that such was not the intention of the legislature and such is not the meaning of the statute."

*Mr. A. B. Stuckey,* for appellant, cites: 31 S. C. 563; 70 S. C. 309.

*Messrs. Lee & Moise, Harmon D. Moise* and *John H. Clifton,* contra, cite: 50 S. C. 467; 29 S. C. 487.

July 25, 1913.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY.   This is an action to recover possession of the tract of land, described in the complaint, and the appeal is from an order of nonsuit.

The plaintiffs, some of whom are infants under the age of twenty-one years, claim title to the land in dispute, under and by virtue of the last will and testament of William Keels, deceased, who devised it to J. L. Keels, their father, for and during the term of his natural life, and after his death to be equally divided between his children.

The defendants denied the plaintiffs' title, and set up the following defenses: 1. That neither the plaintiffs, their ancestor, predecessor or grantor, were seized and possessed of the premises, within ten years next before the commencement of the action.  2. That the cause of action stated in the complaint accrued more than ten years next, before the commencement of the action, and is, therefore, barred by the statute of limitations.   And, 3. That the cause of action accrued more than two years before the commencement of the action, and the plaintiffs are barred under and by virtue of the provisions of section 462, Code of Laws, 1912.

In 1895, the land was sold to pay the taxes, which had been assessed against J. L. Keels, and was purchased by the defendant, Isaac Strauss, to whom a deed of conveyance was made, under which he entered into possession, and which was duly recorded.

J. L. Keels died in 1905, and this action was commenced on the second day of March, 1911.

At the close of the plaintiffs' testimony, the defendants' attorneys made a motion for a nonsuit, on several grounds, but all were overruled except those based on section 115, Code of Laws, 1912, which is as follows:

"In all cases of sale, the sheriff's deed of conveyance, whether executed to a private person, a corporation, or to the commissioner of the sinking fund, shall be held and taken as *prima facie* evidence of good title in the holder, and that all proceedings have been regular and all requirements of the law have been complied with. No action for the recovery of land sold by the sheriff under the provisions of this act, or for the recovery of the possession thereof, shall be maintained unless brought within one year from the date of sale, and unless it be sustained by conclusive evidence from the tax duplicates, or from a tax receipt signed by county treasurer, or by a certificate signed by the secretary of State, or by his agent, showing that all of the taxes and levies for which the land was sold, with the costs that may have accrued thereon, were paid prior to the sale at the proper time, and to the properly authorized officials."

Plaintiffs appealed upon exceptions, which will be reported.

The main question presented by the exceptions is, whether section 115, Code of Laws, 1912, is applicable to this case.

Section 288, Code of Laws, 1912, provides, that "every person shall be liable to pay taxes and assessments, on the real estate of which he or she may stand seized in fee, or for life, by courtesy, in dower, as husband in right of his wife, or may have the care as guardian, executor, trustee or committee."

Section 290, Code of Laws, 1912, is as follows: "All taxes, assessments and penalties legally assessed shall be considered and held as a debt payable to the State by a party against whom the same shall be charged; and such taxes, assessments and penalties shall be a first lien in all cases whatsoever upon the property taxed; and the county

treasurer may enforce the said lien by execution against the said property; or, if it can not be levied on, he may proceed by action at law against the person holding said property."

Section 297, Code of Laws, 1912, contains the following provision: "All persons required by law to list property for others, shall list it separately from their own, and in the name of the owner thereof; but shall be personally responsible for the taxes thereon, for the year in which they list it, and may retain so much thereof, or the proceeds of the sale thereof, in their own hands, as will be sufficient to pay such taxes: *Provided,* That all lands shall be listed and assessed as the property of the person or persons having the legal title to, and the right of possession of, the land at the time of listing and assessment, and in case of persons having possession of lands for life, in the name of the life tenant."

Section 393, Code of Laws, 1912, is as follows: "The auditor shall make out in a book to be prepared for that purpose, in such manner as the comptroller general shall prescribe, a complete list or schedule of all taxable property in his county, and the value thereof as equalized, so arranged, as that each separate parcel of real property in each district, shall be contained in a line or lines opposite the names of the owners, arranged in numerical or alphabetical order. And the value of all personal property shall be set down opposite the names of the owners thereof, respectively; and if listed by any other person for and in the name of the owner, the name of such person, and the character in which he acted, shall also be stated in such list."

The deed of the sheriff to Isaac Strauss contains the following recitals:

"Whereas, It is provided that immediately upon the expiration of the time allowed by law, for the payment of taxes in any year, the county treasurer of each county shall issue in the name of the State, a warrant or execution against each defaulting taxpayer in his county, directed to the sheriff or his lawful deputy, requiring and command-

ing him to levy the same by distress and sale of so much of
the taxpayer's estate, real or personal, or both, as may be
sufficient to satisfy the taxes, State, school, county and spe-
cial, of such *defaulters;* and further, that under and by
virtue of such warrant or execution the sheriff shall take
exclusive possession of so much of the *defaulting* taxpay-
er's estate, real and personal, or both, as may be necessary
to raise a sum of money named therein; and,

"Whereas, There appears on the tax duplicate of Sumter
county for the fiscal year commencing November 1st, 1892,
to '93 and 1893 to '94, certain real etsate, consisting of one
hundred and nine acres of land (under two executions),
assessed in the name of *J. L. Keel,* and valued at three hun-
dred and fifty dollars; the taxes, penalties and assessments
thereon amounting under both executions to twenty-seven
81-100 dollars; and,

"Whereas, The above named *J. L. Keels,* having neg-
lected to pay to the county treasurer of Sumter county the
above taxes, assessments and penalties as prescribed by law,
an execution was issued therefor as directed by said act, on
the 20th day of April, 1894, and 16th day of March, 1895,
and lodged with the sheriff of Sumter county; and,

"Whereas, At a sale made as directed by said act, by the
said sheriff, after levy under said execution and due notice,
Isaac Strauss became purchaser, and having paid to the
sheriff the said amount," etc.   (Italics added.)

The statutes provide, that property in the possession of a
life tenant, shall be listed for taxation against him, but they
do not contemplate that the taxes should be assessed against
the property of the remaindermen.   It was, no doubt, sup-
posed that the value of the life estate would be sufficient to
satisfy the taxes; and the intention of the legislature was
to prevent just such a case as the one now under considera-
tion, where the rights of the remaindermen would other-
wise be sacrificed, when there is no necessity to resort to
their property.

Another reason why there was error in granting the nonsuit was, because the property of those alone, whose names are on the tax list, is subject to sale for nonpayment of taxes. In the case of *Smith* v. *Cox,* 83 S. C. 1, 65 S. E. 222, one of the reasons why the purchaser at the tax sale therein mentioned, was not allowed to hold possession of the property against the owner, was because a sale of land under a tax execution, issued on an assessment against one not the owner, is void. A further reason why there was error in granting the nonsuit was, because the case comes within the following principles, announced in Black. Tax Titles, page (4th ed.) 578, quoted with approval by Mr. Justice McGowan in *Shell* v *Duncan,* 31 S. C. 547, 10 S. E. 330: "In those States where tax is a charge upon the land alone, where no resort in any event is contemplated against the owner or his personal estate, and where the proceeding is strictly *in rem,* the tax deed will undoubtedly have the effect to destroy all prior interests in the estate, whether vested or contingent, etc. In such case the tax law is notice to the whole world of the liability of the land for all public assessments, etc. If one neglect his duty in this respect, his title becomes extinct, and a new and independent title becomes vested in the purchaser, freed from all prior encumbrances, and, indeed, of every interest carved out of the old fee. On the other hand, where the law requires the land to be listed in the name of the owner, provides for a personal demand of the tax, and in case of default, authorizes the seizure of the body or goods of the delinquent, in satisfaction of the tax, and in terms, or upon a fair construction of the law, permits a sale of the land only, when all other remedies have been exhausted; then the sale and conveyance of the officer passes only the interest of him, in whose name it was listed, upon whom the demand was made, who had notice of the proceedings, and who alone can be regarded as legally delinquent. In such case the title is a derivative one, and the

tax purchaser can recover only such interest, as he may prove to have been vested in the defaulter at the time of the assessment, etc."

Under the statutes of this State, as we have shown, the amount due for taxes is a debt against the person listing the property, for which he may be sued. Furthermore the real estate can not be sold until the personal property has been exhausted. *Ebaugh* v. *Mullinax,* 34 S. C. 364, 13 S. E. 613.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.