14714

VALLENTINE v. ROBINSON

(198 S. E., 197)

*Messrs. Zeigler & Brailsford,* for appellant,

*Messrs. Berry & Berry* and *John S. Bowman,* for respondent,

July 6, 1938.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

John Brunson, late of Orangeburg County, died intestate June 25, 1930, seized and possessed of 368 acres of land, which were listed in the books of the county auditor. An Act of the General Assembly, known as the "Tax Extension Act for Orangeburg County", provided for the collection of delinquent taxes in ten equal annual install-

ments. This Act went into effect May 5, 1932, 37 St. at Large, p. 1560, at which time taxes on this land for the years 1929, 1930, and 1931, were delinquent and in execution. The executions for these years were handled in the manner specified by this Act. The taxes for 1932 and 1933 were not paid, and executions against John Brunson were issued by the county treasurer to the collector of delinquent taxes.

John Brunson left as his sole heirs-at-law Charles E, Brunson, Julia Love and Hattie C. Spires. There was no administration of his estate.

W. M. Mukenfuss, executors, and Julia S. Herbert, mortgage creditors of John Brunson, segregated from the original 368 acre tract, the lands covered by their respective mortgages, so that 106 acres were allotted to the Muckenfuss mortgage, and 178 acres to the Herbert mortgage. The remainder, supposed to be 85 acres, was covered by a mortgage originally given by John Brunson to C. A. Cornelson and by successive assignments now held by plaintiff. It is alleged, however, that the remainder of the land is 65 instead. of 85 acres. This 85 acres was listed on the books of the county auditor as lands of "Est. John Brunson" for that portion of the delinquent taxes set up against the 85 acres. The execution, therefor issued against the whole tract, were withdrawn and marked *nulla bona* by the county auditor. New executions for 1932 and 1933 were sent to the office of the delinquent tax collector, but the executions for 1929, 1930 and 1931 remained in the office of the county treasurer, these taxes to be collected in ten installments under the provisions of the "Tax Extension Act". The first and second installments, which were due in 1932 and 1933, were not paid and were entered on the books of the collector of delinquent taxes.

It was shown by the plats in evidence at the trial that the tract allotted to the Muckenfuss mortgage contained 111 acres; that allotted to the Herbert mortgage contained 174

acres, and that allotted to the estate of John Brunson contained 65 acres.

The taxes on the tract listed in the name of "Est. John Brunson" were not paid and this tract was sold by the collector of delinquent taxes February 4, 1935, for taxes for the years 1929, 1930, 1931, 1932, 1933 and 1934, amounting to $255.34. Contained in this amount was the sum of $13.45 interest.

The property was bid in by respondent for $265.00, for which he received the deed of the collector of delinquent taxes on February 6, 1936.

Taxes for the year 1934 had not gone into execution at the time of the sale.

Appellant brought action in the Orangeburg County Court for the foreclosure of his mortgage. The defendants, other than L. S. Robinson, were the heirs-at-law of John Brunson, who were alleged to have, or claim, some interest in the mortgaged premises. Robinson alone answered the complaint, alleging that he was in possession of the premises under tax deed executed and delivered to him, with possession, on February 6, 1936, by C. H. Williams, collector of delinquent taxes for Orangeburg County. Respondent demanded a trial by jury on the issue of title raised by his answer. Accordingly, the case was transferred to Calendar 1 for the trial of this issue, all other issues being reserved for the Court.

During the trial, when appellant offered testimony tending to attack the validity of the tax deed, respondent objected to it on the ground that no reply had been made to the answer, and no defects in the title had been set up in the complaint. After hearing argument, the trial Judge declared a mistrial and granted leave to appellant to amend his complaint by specifying the alleged defects in the tax title. To the amended complaint, respondent filed an amended answer setting up his tax deed and his possession thereunder.

On these amended pleadings, the issue of title was tried before a jury at the October, 1937, term of the Court. At the conclusion of all the testimony appellant moved for a directed verdict, which motion was refused. The jury found in favor of the validity of the tax title. From the judgment entered on the verdict plaintiff appeals on seven exceptions, which are practically covered by the grounds for directed verdict, which are as follows:

1. Because notice was not given to the mortgagee thirty days before the execution of the deed as required by Section 2855, Code of Laws of South Carolina.

2. Because the property was not levied on, advertised and sold in the name of the true owner.

3. Because the property was not levied on by a duly constituted officer.

4. Because the person attempting to make the levy was not armed with the tax execution.

5. Because at the time of the segregation in November, 1934, delinquent taxes on 85 acres of land were set up as against this tract, whereas it contained only 65 acres.

6. Because the tax collector did not seize and take possession of the property before it was sold, either in person or through a deputy as required by the statute.

7. Because a substantial portion of the total amount of the taxes for which this property was sold by the Tax Collector was represented by a penalty of one per cent per month, created under the Tax Collector's Act for Orangeburg County, which penalty has been declared unconstitutional.

8. That because as to that portion of taxes assessed for 1931 and prior thereto, no execution was in the hands of the Tax Collector at the time of the levy and sale.

9. Because the sale included taxes for the year 1934, which at that time had not been placed in execution.

In his brief appellant elects to treat the issues made by the exceptions under three heads, viz.:

1. Were the requirements of law that lands must be listed on the tax books, levied on and sold in the name of the true owner complied with?

2. Was there a lawful levy?

3. Does the fact that improper items were included in the amount for which the land was sold vitiate the sale?

We shall adopt appellant's method of treatment of the issues made by the exceptions, without treating each of the exceptions in detail, but we shall give consideration to the questions made by each of them.

The statute law of the State with meticulous care states the manner in which property shall be listed and returned for taxation. Section 2605, Civil Code, 1932, provides that: "All persons required by law to list property for others shall list it separately from their own, and in the name of the owner thereof. * * * That all lands shall be listed and assessed as the property of the person or persons having the legal title thereto, and the right of possession of, the land at the time of listing and assessment. * * * That in the case of estates administered, the property shall be listed and assessed as the property of 'the estate of' the person deceased."

When John Brunson died June 25, 1930, his lands were listed in his name, and continued to be so listed on the books of the county auditor until October 31, 1934, when the lands were segregated as hereinabove set forth. Thereafter the lands were listed in the name of the "Est. Jno. Brunson." The executions under which the levy and sale, herein involved, were made were issued against "Est. Jno. Brunson."

John Brunson left him surviving as his sole heirs-at-law and distributees Charles Brunson, Julia Love and Harriet C. Spires, who took under the statute of distribution all the property of which he died seized and possessed. The title to his lands vested in them. There was no administration of his estate.

The statute is explicit that lands shall be listed and assessed and levied on and sold in the name of the true owner. Does the failure to do so in this instance vitiate the tax sale?

It is a common assumption that a tax execution is issued against the property; such is not the case; it is issued against the defaulting taxpayer. The assessed taxes are a debt due to the State by the owner of the property. Section 2569, Civil Code, 1932, declares that: "All taxes, assessments and penalties legally assessed shall be considered and held as a debt payable to the State by a party against whom the same shall be charged."

And the taxes may be made out of any property the taxpayer has. It is thus seen that the execution must issue against the true owner of the property.

In the case of *Smith v. Cox*, 83 S. C., 1, 65 S. E., 222, it appears that on July 27, 1891, Smith conveyed the lot in question to Palmer by deed which was duly recorded. December 30, 1896, Palmer reconveyed the lot to Smith by deed duly recorded in the offices of the auditor and R. M. C. Smith failed to return the property in 1897, but the board of Assessors made it for him and he paid the taxes due that year. But the property remained listed in the name of Palmer, and taxes for 1897 were assessed against him, which he did not pay. Execution was issued against him and the lot sold. Circuit Judge Prince held (page 224) : "The taxes assessed against the said Palmer for the year 1897 were never a lien on the lot in question, and * * * as plaintiff [Smith] had paid the taxes assessed against him for said property, the taxes were not delinquent * * * [and] the treasurer was wholly without authority to issue an execution against this property, * * * and * * * the sheriff was wholly without authority to sell plaintiff's land under the execution issued * * * for the payment of Palmer's taxes, even had said taxes been lawfully assessed against Palmer." In other words the property was not assessed in the name

of the true owner of the lot, nor was the execution issued, levy and sale made in the name of the true owner thereof.

In the case of *Parker v. Horton,* 114 S. C., 313, 103 S. E., 546, the land was returned in the name of the life tenant's estate, and was sold for taxes. The Circuit Judge held the sale valid. He reviewed the cases of *Dickson v. Burckmyer,* 67 S. C., 526, 533, 46 S. E., 343, 345, and *Koth v. Pallachucola Club,* 79 S. C., 514, 517, 61 S. E., 77, 78, as sustaining his holding. The Supreme Court reversed the case, saying (page 548): "The respondent's attorneys in their written argument conceded that there is but one issue in the case, and that is whether the fact that the lands were returned as the property of Nancy Hough's estate, and not as the estate of Isaac Hough rendered the title of the purchaser void. The case of *Taylor v. Strauss,* 95 S. C., 295, 78 S. E., 883, is conclusive of this question, and shows that his Honor, the Circuit Judge was in error. Reversed."

The *Taylor v. Strauss case* referred to was also a case of life tenancy. The syllabus in that case is in these words: "The amount due for taxes is a debt due by the person listing the property for which he may be sued. A life tenant is required to assess the land in his possession as such and upon his default in paying taxes only his interest in the land can be sold under execution against him." The land was sold under tax execution and was bought by Isaac Strauss. His deed was declared by the Supreme Court to be void.

In the case of *Pollitzer v. Beinkempen,* 76 S. C., 517, 57 S. E., 475, the tax deed was adjudged to be good, where the land had been returned, assessed and sold as the property of "the estate of," which brought the case under the provisions of Section 2605 of the Code, which is to this effect: "That in the case of estates administered, the property shall be listed and assessed as the property of 'the estate of' the person deceased."

Commenting on this case in the case of *Koth v. Pallachucola Club*, 79 S. C., 514, 61 S. E., 77, this Court said (page 78) : "That case fell strictly under the terms of the statute, as the estate of the deceased owner was an estate upon which there was administration. In this case there was no proof of administration on the estate of Ann May Mason, and therefore it falls without the exception mentioned in the proviso, and is not controlled by the case of *Pollitzer v. Beinkempen*."

It is pertinent to remark here that in our present case it is conceded that there was no administration of the estate of John Brunson, and therefore no authority for anyone to list, assess 'and sell the lands involved in this case as the property of "Est. Jno. Brunson."

The tax title in the case of *Koth v. Pallachucola Club* was sustained because in that case the property had been listed, assessed and sold in the name of "heirs of Ann May Mason." The Court said: "In this case there is special reason for the application of the rule we have stated. There was evidence that after the death of Ann May Mason one of her heirs on behalf of all returned the land for taxation and paid the taxes for several years, and then voluntarily ceased to pay them."

No such conditions prevailed in this case.

Was there a lawful levy?

Section 2853, Civil Code, 1932, provides that when taxes become delinquent the county treasurer shall issue his warrant, or execution, against the defaulting taxpayer *"directed to the Sheriff of his county or his lawful deputy,* (italics added) requiring and commanding him to levy the same by distress and sale of so much of the defaulting taxpayer's estate, real or personal, or both, as may be sufficient * * *."

Section 2855, Civil Code, 1932, provides that: "Under and by virtue of said warrant or execution, the sheriff shall seize and take exclusive possession of so much of the

defaulting taxpayer's estate, real or personal, or both, as may be necessary to raise the sums of money named therein  *  *  *."

By Act of the General Assembly of 1932, and amended by the Act of 1933, the office of collector of delinquent taxes for Orangeburg County was created, and the duties of the sheriff in the matter of collecting delinquent taxes were devolved on such collector. Neither of the Acts gave authority to the collector to appoint deputies or assistants in the collection. The duties of the sheriff, thus devolved on the collector of delinquent taxes, required that a levy of the nature of that here under discussion be made by the collector himself, or by an officer of the rank of deputy sheriff, duly appointed and vested with the power or authority of such deputy sheriff, and charged with his responsibility and liability for his acts.

It is conceded that the levy in this instance was not made by the collector of delinquent taxes, but by B. B. Williams, one of several assistants employed by C. H. Williams, the collector of delinquent taxes, to assist him in making such collections. B. B. Williams testified to the manner in which he made the levy. He said: "In January, 1935, I was one of the Assistants appointed by the Tax Collector to assist him in the collection of delinquent taxes. I was sent by him to make a collection of the taxes on the Brunson 85 acres or levy on the land. I found John Robinson and Shellie Love; a grandson and son-in-law of John Brunson, living on the place. They showed me the land and I told them what I wanted and notified them. I tacked up a notice similar to the one you showed me (exhibit 'B') on a tree. I did not have the tax execution with me at the time. I did not leave the land in the possession of anybody. I do not know of any other levy having been made on the place, and do not know of a levy having been made by the Tax Collector."

The levy was not made by the collector of delinquent taxes, nor by a duly qualified officer of the law. The person

attempting to make the levy did not have the execution with him. He did not take exclusive possession of the land. Was it a legal levy as judged by the requirements of the statute?

In the case of *Dickson v. Burckmyer*, 67 S. C., 526, 46 S. E., 343, the Supreme Court said (page 347) : "The next allegation is that the sheriff failed to 'seize and take exclusive possession' of the land. The general rule is that actual seizure or possession by the officer is not necessary to a levy where the debt which is the basis of the execution is a lien on the property. Freeman on Executions, § 280. In this State the entry of the levy on an execution issued on a judgment has been held sufficient on the ground that no statute requires actual entry and possession of the land. *Martin v. Bowie*, 37 S. C., [102] 115, 15 S. E., 736. A tax execution stands upon an entirely different footing, because the statute explicitly requires the sheriff to 'seize and take exclusive possession' under such an execution. 'Under and by virtue of said warrant or execution, the sheriff shall seize and take exclusive possession of so much of the defaulting taxpayer's estate, real or personal, or both, as may be necessary to raise the sum of money named therein and said charges thereon, and, after due advertisement, sell the same,' etc. Revised statute of 1893, § 349 (Code of 1902, § 423). The requirement is one which greatly concerns the defaulting owner of the land, for the seizure and taking possession by the sheriff is a notorious act, which tends to give the defaulter and the community notice of the intended sale, and thus prevent a sacrifice of the property. We think the tenth objection to the title is well founded."

The wisdom of the enforcement of the provisions of the statute is made manifest by what appears from the record in this case. The land was not seized and taken in the exclusive possession of the person attempting to make the levy. He found resident upon it the grandson and son-in-law of John Brunson, deceased. How related to C. E. Brun-

son, Julia Love and Hattie C. Spires, the heirs-at-law of John Brunson, does not appear from the record. Nor does it appear upon what terms they were residing upon the land. But it does appear that one of them bought the land, 85 acres (or 65), for $265.00, and took title in his own name and is in possession thereunder.

In the case of *Barrineau v. Stevens*, 75 S. C., 252, 55 S. E., 309, the action was one to recover possession of the land by the taxpayer; the defendant claimed and held under a tax title. One of the grounds of alleged defect in the title was that the sheriff did not, before the sale, "seize and take exclusive possession" of the land as required by statute. Mr. Justice Woods for this Court, quoted from the case of *Dickson v. Burckmyer, supra,* in which case he also wrote the opinion, as follows (page 310) : *"Dickson v. Burckmyer,* 67 S. C., [526] 528, 46 S. E., 343, holds failure to comply with this requirement fatal to a tax title. In this case, instead of the seizing and taking of exclusive possession by the sheriff, or his regularly appointed deputy, required by the statute, under the tax execution, the defendant, who was nothing more than a magistrate's constable, undertook to act for the sheriff in seizing and taking possession of the property. It is not pretended the defendant was a regular deputy of the sheriff, appointed and qualified under Sections 830 and 831 of Civil Code of 1932; but the effort is made to sustain his authority under Section 832, which reads: 'The sheriff, without seeking the approval of the Circuit Judge, may appoint special deputies, as the exigency of his business may require, for the service of process in civil and criminal proceedings only; and for their conduct he shall be responsible.' We are not called on to determine what is meant by the expression 'process in civil and criminal proceedings only,' for there is not only a lack of evidence of any appointment as a special deputy under this statute, but the defendant's testimony clearly means he was collecting tax executions, and undertook to levy on and take possession of this land as a magistrate's constable. The

tax sale was, for this reason, ineffectual to confer title on the defendant."

The decision in that case emphasizes the wisdom of enforcing strict compliance with the requirements of the statute. In that case the magistrate's constable who made the levy became the purchaser of the land at the tax sale.

In the case of *Glymph v. Smith et al.,* 180 S. C., 382, 185 S. E., 911, 105 A. L. R., 631, Mr. Justice Fishburne, in a well-considered opinion, discusses the requirements of Section 2855, relating to "seizing and taking exclusive possession." The deputy sheriff who made the levy in that case testified that he went to the home of the defendants on the land in question and that he told Mrs. Smith: "I was collecting taxes, and asked her if she could pay them. She told me that she could not pay them, and I told her I would have to make a levy on it." (Page 912.)

The opinion states: "This is the sole testimony tending to prove that the sheriff 'did seize and take exclusive possession' of the property of the defaulting taxpayer's estate as required in Section 2855, Code, 1932."

Further, the opinion says: "In the instant case the action of the deputy sheriff was entirely too informal. He testified that he merely told Mrs. Smith that he would have to levy; he said nothing about taking possession, and in no sense did he take possession. Mrs. Smith testified that she did not know her property was to be sold until the sale actually took place. It follows that the tax sale of this property was invalid. It is likewise clear that the deed of the sheriff to the plaintiff is null and void."

The action of the assistant of the collector of delinquent taxes who made the levy in the present case parallels for informality the action of the deputy sheriff in the *Glymph v. Smith case.* In the present case the assistant did not have in his possession the execution under which he was supposed to be acting; he left no one in possession of the land under and by virtue of the execution and levy, and he was in no sense such officer as was

authorized by Section 2855 of the Code to levy a tax execution.

In the case of *Home Bldg. & Loan Ass'n v. City of Spartanburg et al.,* in which the opinion of this Court was filed November 10, 1937, and reported in 185 S. C., 353, 194 S. E., 143, the case was heard by Hon. G. Dewey Oxner, whose decree was affirmed and adopted by this Court. The case turned in part upon the validity of a tax title. The learned Circuit Judge in stating the questions presented for his consideration, thus stated the first of them (page 145): "(1) That there was no levy upon or seizure of the property as required by law prior to the sale." In disposing of it, he said this: "It is undisputed from the testimony that there was never any levy made, or seizure of the property prior to the sale. * * * No entry was ever made upon the property. The recent case of *Glymph v. Smith,* 180 S. C., 382, 185 S. E., 911, 105 A. L. R., 631, is conclusive that there has been no seizure of the property as required by law. Upon this ground it is clear that the sale of June 1, 1936, was illegal."

It appears that the city officers mailed to the plaintiff, whose taxes were in default, notice of execution and levy without entry upon the property. At the tax sale the city became the purchaser. It is this sale which is adjudged to be illegal.

If it is shown that improper items were included in the amount of taxes claimed to be due and for the collection of which execution was issued, levy and sale made, does it vitiate the sale?

The execution was issued for taxes alleged to be due and in default in the sum of $225.23, on the 85-acre tract. This execution was intended to, and did, cover the taxes due from 1929 to 1934, inclusive. When the segregation of the lands was made in October, 1934, the executions for the years 1932 and 1933 were sent to the office of the collector of delinquent taxes, but the executions for the years 1929, 1930 and 1931 remained in the office of the county treasurer

for the reason that the taxes for those years had been "set up" to be collected in ten installments under the "Tax Extension Act." *supra*. Mr. Salley, treasurer for Orangeburg County, testified thereabout: "The first and second installments of one-tenth each became delinquent in my office in 1932 and 1933 respectively, and without the issuance of formal executions therefor, were set upon the books of the office of the Tax Collector for execution. The 1932 and 1933 taxes also became delinquent and formal executions therefor were issued by me against John Brunson and turned over to the Delinquent Tax Collector. In 1934 these executions for 1932 and 1933 were returned to my office, a segregation made of the property, new executions were issued against 'Est. Jno. Brunson' for that part of the total taxes set up against the 85 acres. The executions for 1932 and 1933 were sent to the office of the Tax Collector but those for 1929, 1930 and 1931 remained in my office * * *. All the taxes due on the property, including the taxes for 1934, were collected by the Tax Collector and paid to me."

E. C. House testified: "I am Assistant Collector of Delinquent Taxes. Mr. C. H. Williams is Delinquent Tax Collector. I made a levy on the original tract of 368 acres on April 18, 1934. The entire tract was sold and bid in by the County. When the segregation took place in October, 1934, this sale was cancelled, 85 acres was set up in name of John Brunson Est. and execution issued against it. Levy was made January 17, 1935. When tax executions come to our office from the Treasurer they are placed in metal cabinets and are never turned over to the men who go out to make the levies. They remain in our office until the taxes are paid. That is always the case."

Penalties on installment one and two were $3.78. The penalty was one per cent. per month. For 1932 the penalty was $7.03. For 1933 the penalty was $2.64.

It is contended that the segregation of October 31, 1934, imposed upon the tract allotted "Est. Jno. Brunson"

85/368th part of the taxes assessed against all of the Brunson lands; whereas it appeared on the trial that the part of the lands allotted "Est. Jno. Brunson" contained only 65 acres. This seems to be undisputed. It would seem that that tract was required to pay more than its share of the taxes.

The taxes for the year 1934 were included in the execution and were collected from the proceeds of the sale of the land. It appears that the taxes for that year had not matured and were not delinquent and should not have been included in the execution under which the land was sold.

Included in the sale were taxes for the years 1929, 1930 and 1931. The executions for these years, issued in 1934 when the segregation of the land occurred, were in the office of the county treasurer; they had never been sent to the office of the delinquent tax collcetor; they were not in his possession. He could not, therefore, have levied upon this land under those executions. The amount of the taxes for these three years does not appear, but it does appear that they entered into the sum of $255.23, for the collection of which the land was sold.

The Act of June 12, 1933, 38 St. at Large, p. 561, which creates the office of delinquent tax collector for Orangeburg County and defines his duties, provides, Section 4, that: "He shall add and collect interest at the date of one (1%) per cent. per month, or fraction thereof, upon the amount of any execution from the date such execution is issued until final payment is made, such interest to be calculated only upon the balance remaining unpaid where he has accepted installment payments." Act April 13, 1932, 37 St. at Large, p. 1540, § 4.

The appellant argues that in this case interest in the aggregate sum of $13.45 was included in the taxes for the payment of which the land was sold, and that such inclusion was illegal because such charge of interest has been declared by this Court to be unauthorized because the Act providing for its charge and collection is unconstitutional.

In an illuminating opinion by Mr. Justice Baker in the case of *Webster v. Williams*, 183 S. C., 368, 191 S. E., 51, 111 A. L. R., 1348, this question is discussed and decided. The learned Justice said (page 52) : "The questions presented in this case involved the constitutionality of a portion of a statute, applicable only to Orangeburg County, which undertakes to add 1 per cent. per month to all delinquent taxes, in addition to the fees and penalties provided by the general law, after the same have been placed in execution."

His Honor reviews the statutes bearing on the question and says :

"This undoubtedly is a subject within the legislative province, and one requiring legislative action. Accordingly, we find that to meet the very purposes of the legislation now in question, the Legislature has provided by general law, in Section 2830 of the Code, for certain penalties, in the form of graduated payments, when taxes become delinquent; and in Section 2854 of the Code, further provisions are made, imposing additional penalties in the form of costs, when the taxes go into execution.  *  *  *

"Reluctant though we are to declare an Act of the Legislature, or any portion thereof, invalid, we can see no alternative in the present case. Conceding to the Legislature all possible power in the enactment of local legislation, within constitutional bounds, to meet the exigencies of peculiar local conditions, we cannot escape the necessity of declaring this legislative power subordinate in this case, to the restriction expressly provided in Subsection 9 of Section 34, Article 3 of the Constitution."

It would seem certain that these items of interest were improperly included in the taxes for the collection of which the land was sold.

In the case of *Charleston Heights Co. v. City Council of Charleston*, 138 S. C., 187, 136 S. E., 393, Mr. Justice Cothran, delivering the unanimous opinion of this Court, said (page 399) :

"Assuming that the city council has the same rights as to school taxes as are conferred upon the State, the law seems plain that a tax sale is void unless the property seized was liable for all of the taxes for which it was sold. * * *

" 'The decisions generally recognize the following fundamental rules: That a tax sale is invalid for every purpose unless the property was at the time liable for all the taxes for which it was sold * * *.' 37 Cyc., 1287.

"In *Gage v. Pumpelly*, 115 U. S., 454, 6 S. Ct., 136, 29 L. Ed., 449, it is held:

" 'Under the laws of that state [Illinois], as construed by its Courts, if any portion of a tax assessed upon real estate, and levied and collected by sale of the property, is illegal, the sale and the tax deed are void.' [Citing cases from Illinois, Ohio, Mississippi, California, and Cooley on Taxation.]

" 'A sale of land for taxes is not valid unless the land was liable for all the taxes for which it was sold.' *Bucknall v. Story*, 36 Cal., 67."

Counsel for respondent argue that the Court has no jurisdiction to set aside a tax deed in an equitable action to foreclose a mortgage in which a purchaser, who is in possession, is made a party under the allegation that he has some interest in the premises.

It is sufficient to say that no such issue was made by the pleadings, nor was it passed upon by the Court below. Moreover, on motion of respondent's counsel the case was transferred from Calendar 2 to Calendar 1 and the question of title was tried by jury.

It is the judgment of this Court that for the conclusions hereinabove set forth, the tax sale was void and the tax title is invalid.

The judgment of the Court below is reversed and the case remanded for trial on the issues reserved.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.

Mr. Justice Carter did not participate on account of illness.