16543

DILLON COUNTY v. MARYLAND CAS. CO.
(67 S. E. (2d) 306)

*Messrs. W. B. Hawkins* and *Herbert Britt,* of Dillon, and
*McDonald & McGowan,* of Florence, *for Appellant,*

*Messrs. Royall & Wright,* of Florence, *for Respondent, Maryland Casualty Company,* and *Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Respondent, W. E. Allen,*

September 13, 1951.

STUKES, Justice.

This is the second appeal in this case, Decision of the first is reported in 217 S. C. 66, 59 S. E. (2d) 640. It contains summary of the allegations of the complaint, to which reference should be had. Demurrer, which had been sustained by the lower court on the ground of unconstitutionality of the special marriage license law applicable to Dillon County, Act No. 603 of 1948, 45 St. at Large, p. 1612, was overruled by reversal of the order there appealed. It was held that the (now former) probate judge and his surety, who are the defendants, are without capacity to question the validity of the law. The case was remanded on April 20, 1950, with leave to defendants to answer.

The defendant Casualty Company had previously served its answer and amended answer as thereafter did the probate judge who alleged by way of amendment that on August 19, 1950, David H. Baker brought action against him, individually and as probate judge, and against the treasurer of Dillon County to recover the sum of $3.00 which the plaintiff alleged he paid under protest for a marriage license on July 29, 1950, in excess of the $1.00 fee in other counties under the general law. Appeal in the latter case was decided by judgment filed August 28, 1951, *Baker v. Allen,* S. C., 66 S. E. (2d) 618, and reference may be had to that decision for fuller understanding of the relation of that case to this. Countermotions were heard by the circuit judge and resulted in his order dated December 7, 1950, that of plaintiff being for an order of reference, and that by the defendants for stay of this action pending final determination of the *Baker case, supra.*

The lower court granted a stay order upon the ground that the result of the *Baker case* will vitally affect the issues in the case in hand, certainly to the extent of the amount of the recovery. The *ratio decidendi* was that if the special act relating to marriage licenses in Dillon County should be held unconstitutional in the *Baker case,* it would be void *ab initio* and that result be then available as defensive matter to these defendants. Counsel for defendants practically admitted in argument liability to plaintiff (possibly after amendment of the complaint) for the sum of $1.00 (the fee provided by the general law) for each of the licenses which shall be established in this action to have come within the allegations of the complaint.

The appeal from the stay order is upon several exceptions which the plaintiff county, now appellant, has briefed as raising four questions, but respondents more concisely present two and negative answer to the first of them is decisive of the appeal. It is, as framed by respondents, as follows: "If the *Baker case* results in a holding that Act

No. 603 is unconstitutional, will it affect the proceedings and/or outcome in the present case?"

Respondents rely mainly upon decisions of the Supreme Court of the United States in which it was said, in effect, that the adjudication of unconstitutionality of a statute renders it a nullity for all purposes *ab initio*. These former utterances have since been expressly and materially modified by that high tribunal, citing the very cases upon which respondents rely. Now the leading case of that court on the subject appears to be *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U. S. 371, 60 S. Ct. 317, 318, 84 L. Ed. 329, rehearing denied in 309 U. S. 695, 60 S. Ct. 581, 84 L. Ed. 1035, which was not cited in either of the briefs before us. In that case holders of drainage district bonds were parties to a proceeding in bankruptcy of the obligor and raised no question of the constitutionality of the Federal enabling statute. Later, in another action, which involved other parties, it was held unconstitutional. The holders of the bonds then sued the obligor and denied that they were bound by the former proceeding under an unconstitutional statute, but the court overruled the contention in an unanimous opinion by Chief Justice Hughes, in which he said: "The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. *Norton v. Shelby County*, 118 U. S. 425, 442, 6 S. Ct. 1121, 1125, 30 L. Ed. 178; *Chicago, Indianapolis & Louisville Rwy. Co. v. Hackett*, 228 U. S. 559, 566, 33 S. Ct. 581, 584, 57 L. Ed. 966. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various

aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Question of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified."

That case and this are similar. There the bondholders chose not to attack the constitutionality of the act in the proceeding in which their bonds were adjusted and they were bound by the judgment despite the later adjudication of invalidity in an action between others; here, the probate judge and his surety attempted to resist the act upon the ground of alleged unconstitutionality but could not do so because the judge was a public officer, charged with the ministerial duty of complying with the act and without power to assert its invalidity for unconstitutionality. He is as bound as if he chose not to raise the question. There is no material difference in the cases. That in hand is, of course, stronger at this stage for application of the principle decided in the *Chicot case* because here in fact there has been no adjudication of unconstitutionality. But, following the lead of the briefs, we have considered the possibility of future adjudication in the *Baker case* that the act is unconstitutional as to the plaintiff there and have decided, and hold, that respondents will nevertheless be bound by its terms in this action, regardless of its unconstitutionality for other purposes and in other actions. The public interest demands this conclusion, just as it denies respondents the right to raise the constitutionality of the act in this action against them for alleged delicts in the administration of it.

It would be an intolerable loophole in the law and inimical to its orderly administration if a public officer charged with

the enforcement of a statute and incapable under the law of alleging its invalidity, could procure another citizen, who is qualified to make the question, to institute legal action for the purpose of obtaining an adjudication of invalidity, and thereby reap benefit. That may or may not be the intended situation here but it cannot be ignored that the probate judge has practically joined forces with the plaintiff in the *Baker case,* which is indicated by the contents of his answer and his joinder in the prayer of the complaint in that action which, if successful, he contends would furnish a defense in large measure in this action. Such a possible course of conduct on the part of a public official cannot be countenanced in a court of justice. Attempted circumvention is evident. "Public office is a public trust" is perhaps primarily a political slogan, apparently originated by Burke and made popular in this country by Grover Cleveland's frequent use of it, but it is also a truism in the law. *O'Shields v. Caldwell,* 207 S. C. 194, 35 S. E. (2d) 184, and authorities there cited; 35 Words and phrases, pages 195, 196.

Recurring to the other authorities upon which respondents rely in the brief, apparently chief of them is *Metzger Motor Car Co. v. Parrott,* 233 U. S. 36, 34 S. Ct. 575, 58 L. Ed. 837, which was decided long prior to the leading *Chicot case, supra.* The facts of it do not coincide with those at hand. There the defendant raised the constitutionality of the State legislative act upon which the alleged cause of action against him depended in the Federal trial court and during the pendency of his appeal the court of last resort of the State, in another action, declared it to be unconstitutional. Here the defendants could not raise the constitutional question, which makes the controlling difference.

To sustain the order of the lower court respondents have also cited the following former decisions of this court: *Whaley. v. Gaillard,* 21 S. C. 560; *Dean v. Spartanburg County,* 59 S. C. 110, 37 S. E. 226; and *Vallentine v. Robinson,* 188 S. C. 194, 198 S. E. 197. Careful consideration of each of these cases shows its present inapplicability. None

is close enough in facts to this case to warrant space and time for review. The authority of them is irrelevant here save one point of the *Whaley case,* which will be referred to presently as contrary to respondents' contention.

Independently of the authorities cited, reason requires reversal of the order under review. At the time of the transactions alleged in the complaint in this action there was no pending attack upon the constitutionality of the act. So far as the record shows no one objected in any court to the terms or the validity of the act until the respondents were called upon in this action to account for the alleged violations of it· by the probate judge, whose public duty it was to administer it according to its terms, and we have held that he and his surety, now respondents, were and are without right and capacity to question the constitutionality in defense of their alleged liability. Thus at the time of the transactions with which this suit is concerned the right and duty of the probate judge with respect to the act were fixed and he was bound to comply with it. His conduct thereabout must be tested under those conditions, regardless of the fate of the act in other, subsequent litigation. In point is the following from the opinion by (afterward) Chief Justice McIver in *Whaley v. Gaillard, supra,* 21 S. C. at page 572: "At the time the coupons were tendered and refused, the law, as it was *then* settled, justified such refusal, and any subsequent change in the law, either by statute or judicial decision, cannot affect a transaction occurring before such change in the law."

Finally, the law of this case with respect to the feature of it presently under consideration was made by the decision upon the former appeal. It was decided that respondents cannot attack the constitutionality of the Act of 1948 in this case. It was not held that they might do so later, upon the event of another action between other parties. The first-blush difficulty of the appeal disappears upon consideration of the fact that the respondents are forbidden to raise the constitutional question. That differentiates the case from one involving private persons or corporations and fully answers the

otherwise apparent anomaly. They cannot raise it now or later, so the action should proceed. .

Nothing that has been said in this decision with respect to the validity or invalidity of the legislative act involved should be taken as an expression of opinion thereabout, because it was not so intended.

It should be added in conclusion that we have no statute which governs the granting of stay orders. Ordinarily and under appropriate conditions the propriety is within the discretion of the trial court. *Rush v. Thompson,* 203 S. C. 106, 26 S. E. (2d) 411. Here, however, misconception of the law influenced the intended exercise of discretion, wherefore reversal must follow.

The order under appeal is reversed and the case is remanded to the trial court.

FISHBURNE and OXNER, JJ., concur.

BAKER, C. J., and TAYLOR, J., dissent.

BAKER, Chief Justice.

I respectfully dissent to the opinion of Mr. Justice Stukes herein.

If the Court should finally declare the Act here involved to be unconstitutional, I cannot see how it could be the foundation of a cause of action against anyone if Dillon County was not in the first instance entitled to more than $1.00 for the issuance of a marriage license. How can it lawfully collect from Allen and his bondsman $4.00 therefor?

The complaint in this case does not allege that Allen collected $4.00 for marriage licenses which he procured to be issued, but alleges his refusal to collect said amount therefor, and turn the same over to the County of Dillon. It therefore seeks to recover of Allen money to which it was never legally entitled, if the Act is declared unconstitutional, as to which I entertain no doubt.

TAYLOR, J., concurs.