10095

## BRADFORD v. RICHARDSON.

### (97 S. E. 58.)

1. Statutes—Subject and Title—Importation of Intoxicants.—Const. 1895, art. III, sec. 17, limiting a statute to one subject, to be expressed in the title, *held* not violated by act February 18, 1918 (30 St. at Large, p. 782), amending section 10 of act February 24, 1917 (30 St. at Large, p. 69), regulating importations of intoxicants, and providing penalties for violation; provision for permit from Judge of probate and penalty for violation by him being germane.

  2. COURTS—PROBATE COURT—JURISDICTION—CHANGE BY LEGISLATURE.—
  Under Const. 1895, art V, secs. 1, 19, making no grant of power to
  probate Courts, and providing that, except in C. county, jurisdiction
  formerly exercised by such Court shall be vested as legislature may
  provide it, except in C. county, is not a constitutional Court, and may
  be vested with such power as legislature sees fit, not inconsistent
  with other provisions of Constitution.

  3. MANDAMUS—JUDICIAL NATURE OF ACT—PERMIT FOR IMPORTATION—
  PROBATE JUDGES.—Duty as to issuing permits for importation of
  intoxicants and taking bond, imposed on "probate Judges" by act
  February 18, 1918 (30 St. at Large, p. 782), amending section 10 of
  act February 24, 1917 (30 St. at Large, p. 69), while requiring exer-
  cise of judgment and discretion, is not an extension of jurisdiction
  of probate Courts, being of a ministerial nature, and clearly intended
  to be performed by the Judge personally and ministerially.

  4. STATUTES — CONSTRUCTION — "COURT" AND "JUDGE." — The words
  "Judge" and "Court" being often, even in statutes, used indiscrim-
  inately and interchangeably, in determining which is meant, not only
  the word used, but the power conferred and the duty to be per-
  formed, in the light of the purpose of the act, must be considered.

  5. CONSTITUTIONAL LAW—PROVINCE OF COURT—WISDOM OF LEGISLATION.
  —The power to legislate being conceded, the Court is not concerned
  with the wisdom of the legislation.

  6. CONSTITUTIONAL LAW—CONSTRUCTION — LEGISLATIVE CONSTRUCTION.—
  While construction by the legislature of a change in the Constitu-
  tion, as removing limitation on its power to change power of pro-
  bate Court, is not binding on the Courts, it is entitled to weight,
  where long acquiesced in, and personal and property rights have
  been acquired under statutes making such changes.

Before SEASE, J., Sumter.    Affirmed.

Mandamus by Singleton Bradford against Thomas E.
Richardson, Judge of probate of Sumter county.    Judgment
for petitioner, and respondent appeals.

Statement. The appeal in the aforesaid proceeding and
action brings up the question of the constitutionality of the
amendatory ·Quart-a-Month Law, passed at the 1918 ses-
sion of the General Assembly, and approved on the 18th
day of February thereof.

*Messrs. Hendersons,* for appellant, submit: *That the act
is unconstitutional, in that the body thereof contains subjects
not expressed in the title:* Const. of 1895, art. III, sec. 17. *No*

*such criminal offense as the punishment of an officer, whether
judicial or quasi judicial, for improper discretion exercised
by him:* Throop on Public Officers, sec. 857; Bishop's Crim-
inal Law, 7th Ed., sec. 460; Wharton's Criminal Law, 9th
Ed., sec. 85. *As to an act in its body enacting a different
subject from that specified in the title:* 16 S. C. 56; Cooley's
Constitutional Limitations, 143v; 79 S. C. 96; 75 S. C. 425,
*et seq.;* 80 S. C. 127; 68 S. C. 148; 51 S. C. 249; 91 S. C.
453; 92 S. C. 94; 63 S. C. —; 64 Am. State Reports, p. 72
(*et seq.*); see especially notes of Judge Freeman. *The act
is also unconstitutional, in that it attempts to enlarge the
jurisdiction of the Court of probate, as fixed by the Consti-
tution of 1895:* Constitution of 1895, judiciary article,
number 5, sec. 19; Freeman on Judgments, sec. 531;
Throop on Public Officers, sections 533-536; 17 A. & E., 2d
Ed., p. 717; 37 Am. State Reports, p. 286; 516 S. C. 288; 52
S. C. 526; 70 S. C. 7; Constitution of 1868, article IV, sec.
20; Constitution of 1895, article V, sec. 19; 10 S. C. 348-
354; 4 S. C. 167; 106 S. C. 71; Cooley on Constitutional
Limitations (—th Ed.), p. 127; Constitution of 1895, judi-
cial article I, sec. 19; 19 S. C. p. 350; 11 S. C. 335; 15 S.
C. 595; Cooley on Constitutional Limitations (7th Ed.) pp.
127 and 245; 85 S. E. 919; 2 McCord's Law, star page
400; 1 Bailey's Law 163; 1 Mill's Constitutional Reports
268.

*Thomas H. Peeples, Attorney General,* and *C. N. Sapp,
Assistant Attorney General,* for respondent.

October 10, 1918.

The opinion of the Court was delivered by MR. JUSTICE
HYDRICK.

This action was brought to test the constitutionality of an
act entitled "An act to amend section 10 of an act entitled
'An act to regulate the shipment and transportation, carry-
ing, storing and having in possession of alcohol, alcoholic
liquors and beverages, and provide penalties for the viola-

tion thereof,' approved February 24, 1917, further regulating the issuance of permits." 30 Stat. 782.

The act of 1917 (30 St. at Large, p. 69), prohibits the importation of intoxicating liquors into this State, except as therein permitted. Section 10 provides that any person desiring to import such liquors shall apply to the Judge of probate of his county for a permit, filing with him an affidavit, showing the facts there specified, and, upon receipt of such affidavit, the probate Judge shall issue a permit. Following is the amendment which was added to that section by the act of 1918, further regulating the issuance of permits:

"*Provided,* That in no case shall the probate Judge issue such permit, unless he is satisfied of the truth of each statement contained in the affidavit herein required, nor shall such permit be issued by other than the probate Judge personally, or by his regularly constituted clerk, within the precincts of his office. Any violation of the provisions of this act by the probate Judge shall subject him to prosecution and penalties as for malfeasance or misfeasance in office: * * * *Provided, further,* That the charge for issuing such permit and taking the affidavit required to obtain the same shall not exceed ten cents, and no charge in addition to this amount shall be made by the Judge of probate or any clerk or assistant for taking the affidavit required for such permit, nor shall any officer be designated by the Judge of probate to take such affidavit."

Respondents applied to the probate Judge of Sumter county for a permit, and filed the affidavit required; but the probate Judge refused to issue the permit, alleging that the act is unconstitutional on two grounds: First, because it violates section 17, art. III, Const. 1895, which says that every act shall relate to but one subject and that shall be expressed in the title; and, second, because it violates section 19 of article V, in that it attempts to extend the jurisdiction of the probate Court. The Circuit Court overruled both grounds, and the probate Judge appealed.

Appellant contends that the provision of the amendment which subjects him to prosecution, as for malfeasance or misfeasance in office, for violating the provisions of the act, is not germane to the subject expressed in the title. Considered in the light of the numerous decisions of this Court, interpreting this provision of the Constitution, this contention is clearly unsound. The Court has uniformly given the provision in question a liberal construction, so as not to embarrass legislation, and has held that any detail of legislation is permissible in the body of an act, if it is germane to the subject expressed in the title. The cases are cited in the footnotes to this section of the Constitutions of 1868 and 1895 in volume II, Code 1912, and pages 610 and 686. See, also, *Dove v. Kirkland,* 92 S. C. 313, 323, 75 S. E. 503, and *State v. Blease,* 95 S. C. 403, 79 S. E. 247.

The subject expressed in the title of the original act, which is incorporated into and made a part of the title of the amendatory act (*State v. County Treasurer,* 4 S. C. 520, 527-529), is the regulation of the importation of liquors into the State. Under that title it was clearly competent for the legislature to enact any provision having a reasonable relation to that subject, including penalties for violating the provisions of the act, for that is clearly a means to the end proposed. But the title goes further in the added words, "and to provide penalties for the violation thereof," so that the subject of providing penalties for violating any of the provisions of the act is clearly set out in the title. The amending act goes still further in its title in the added words, "further regulating the issuance of permits." Clearly the issuance of permits may be regulated by specifying the conditions upon which they may be issued, and by penalizing the issuance of them, except upon the conditions specified. In this connection it may be said that the act does not war-

14—111

rant the construction that the probate Judge may be penalized for an honest mistake or error in the exercise of his judgment or discretion.

The second ground of attack is based upon two erroneous assumptions: First, that the probate Court is a constitutional Court, whose jurisdiction is specified and limited by the Constitution, so that, by implication, the legislature is denied the power to extend it; and, second, that the duty imposed upon the probate Judge extends the jurisdiction of his Court, so as to include a subject matter not specified in the Constitution.

In support of the first of these assumptions, appellant relies upon the case of *Davenport v. Caldwell,* 10 S. C. 317, in which it was held that, under the Constitution of 1868, the legislature was without power to extend the jurisdiction of the probate Court beyond the subjects specified in the Constitution, and, therefore, an act giving that Court jurisdiction in cases for the partition of real estate was held to be void. In that case the Court pointed out the difference between the provisions of the Constitution of 1790, under which the old Court of ordinary (for which the probate Court was substituted) was allowed jurisdiction in some cases for partition, and those of the Constitution of 1868, showing that under the former the judicial power of the State was "vested in such superior and inferior Courts of law and equity as the legislature shall from time to time direct and establish," leaving it to the legislature to distribute the judicial powers amongst the Courts so established, while by the latter the judicial power of the State was vested in the several Courts named therein, and in such municipal and other inferior Courts as the legislature might deem necessary, but the jurisdiction of each of those named, among them the probate Court, was defined and specified.

The Constitution of 1895 differs materially from that of 1868, both in the provisions vesting the judicial power of the State and in the distribution thereof amongst the Courts,

especially with reference to the probate Court.   Let us compare them.   The Constitution of 1868 (article IV, section 1) reads:

"The judicial power of this State shall be vested in a Supreme Court; in two Circuit Courts, to wit, a Court of Common Pleas, having civil jurisdiction, and a Court of General Sessions, with criminal jurisdiction only; in probate Courts, and in justices of the peace.   The General Assembly may also establish such municipal and other inferior Courts as may be deemed necessary."

Section 20 of the same article reads:

"A Court of probate shall be established in each county, with jurisdiction in all matters, testamentary and of administration, in business appertaining to minors and the allotment of dower in cases of idiocy and lunacy, and persons *non compos mentis.*   The Judge of said Court shall be elected by the qualified electors of the respective counties for the term of two years.".

The Constitution of 1895 (article V, section 1) reads:

"The judicial power of this State shall be vested in a Supreme Court, in two Circuit Courts, to wit, a Court of Common Pleas having civil jurisdiction and a Court of General Sessions with criminal jurisdiction only.   The General Assembly may also establish county Courts, municipal Courts and such Courts in any or all of the counties of this State inferior to Circuit Courts as may be deemed necessary, but none of such Courts shall ever be invested with jurisdiction to try cases of murder, manslaughter, rape or attempt to rape, arson, common law burglary, bribery, or perjury: *Provded,* Before a county Court shall be established in any county it must be submitted to the qualified electors and a majority of those voting must vote for its establishment."

Section 19 of the same article reads:

"The Court of probate shall remain as now established in the county of Charleston.   In all other counties of the

State the jurisdiction in all matters testamentary and of administration, in business appertaining to minors and the allotment of dower, in cases of idiocy and lunacy, and persons *non compos mentis,* shall be vested as the General Assembly may provide, and until such provisions such jurisdiction shall remain in the Court of probate as now established."

By section 1 of article IV of the Constitution of 1868 a part of the judicial power of the State was expressly vested in probate Courts, and that part was specified in section 20. But in the Constitution of 1895 the probate Court is not mentioned in the section which vests the judicial power of the State. It is mentioned only in section 19, where it is said:

"The Court of probate shall remain as now established in the county of Charleston."

But that section expressly provides that in all other counties the jurisdiction that formerly belonged to the probate Court "shall be vested as the General Assembly may provide." It follows that the probate Court is not a constitutional Court in any county except Charleston, and that in any or all the other counties the legislature may vest the jurisdiction formerly exercised by the probate Court, or any part of it, in other Courts, as it may deem expedient. This power necessarily includes the power to abolish the Court entirely, and consequently the power to invest it with such jurisdiction as the legislature may see fit, not inconsistent with other provisions of the Constitution.

The change in the Constitution above pointed out was intended, no doubt, to allow for the creation of county Courts, or other inferior Courts, with limited jurisdiction in civil and criminal cases, and to enable the legislature to invest such Courts with the jurisdiction which had theretofore belonged to the probate Court, or *vice versa,* to invest probate Courts with such additional jurisdiction as might be deemed necessary or expedient in the distribution of the

judicial power among such inferior Courts as it was expressly authorized to establish. At any rate, the change removed the possibility of the application in this case of the principle upon which the decision in *Davenport v. Caldwell* was rested, to wit, that of exhaustive grant, because the Constitution of 1895 contains no grant of power at all to the probate Court, and by section 19, article V, the legislature was expressly authorized to take away such jurisdiction as was temporarily left to the probate Courts in all the counties except Charleston. Besides, in *Pelzer v. Campbell*, 15 S. C. 581, 593 (40 Am. Rep. 705), this Court said:

"This 'exhaustive grant' doctrine, excluding, by implication, the power of legislation, is not favored. Implied limitations of legislative power are only admissible when the implication is necessary, as where language, conveying a particular intent, cannot have its proper force without such implication."

Moreover, the duty imposed upon the probate Judge is not an extension of the jurisdiction of the probate Courts. While the probate Judge is required to exercise judgment and discretion in issuing permits, in that he must be satisfied of the truth of the statements contained in the affidavit before doing so, it by no means follows that, in doing so, he is performing a judicial function. It is rather one of a ministerial nature. He is required to exercise judgment and discretion in taking bonds, perhaps, to a greater extent than in issuing permits; nevertheless the taking of a bond is a ministerial act. *Williams v. Weeks*, 70 S. C. 1, 48 S. E. 619. In that case, the Court, quoting from *McRae v. David*, 5 Rich. Eq. 475, said:

"The mere circumstance that an official act demands, on the part of the officer, the exercise of discretion, vigilance, circumspection, or prudence is not sufficient to make it a judicial act. Many acts, clearly recognized in law as ministerial, require the exercise of these qualities, as for instance, of a sheriff making levies, taking bail, etc."

In *State v. Columbia*, 17 S. C. 80, the contention that the power given to the city council to grant licenses for the sale of liquor was a judicial function was denied. The Court, speaking through the late Chief Justice McIver (then Associate Justice), conceding that the act was judicial in a sense sometimes called quasi judicial, said:

"There is no reason why the legislature may not intrust the performance of acts of a judicial nature to persons and bodies corporate who do not constitute one of the Courts of the State; and it is the constant habit to do so. The legislature has at various times conferred upon clerks, sheriffs, and many other officers the power to perform judicial acts, in the sense that they involve the exercise of judgment and discretion; and we do not understand that it was ever supposed that such officers were thereby constituted Courts."

There, too, the city council was a Court of limited jurisdiction; but it was held, nevertheless, that the power to grant licenses to sell liquor was not conferred upon it as a part of the judicial power to be exercised by it as a Court, but as a ministerial power to be exercised by it independently of its real judicial power. There is no difference, so far as the judicial qualities of the acts are concerned, in granting licenses to sell liquor and in issuing permits to import liquor. The power to issue permits might have been conferred upon the sheriff, clerk of Court, or any other ministerial officer.

The legislature, in express terms, imposed the duty upon the probate Judge, and not upon the probate Court. The language used clearly manifests the intention that the duty should be performed by the probate Judge, personally and ministerially, and not by him as the Court. It is true that the words "probate Judge" are often used, even in the statutes, when the probate Court is meant. The words "Court" and "Judge" are often used indiscriminately and interchangeably. We often speak of the "Court," when we mean

the "Judge," and *vice versa.* Therefore, in construing the act, we must consider, not only the words used, but the power conferred and the duty to be performed, in the light of the purposes of the act; and when, from these considerations, it is manifest that the legislature meant the one or the other, that construction will be adopted which gives effect to the legislative intent.

Much was said in argument about the wisdom or policy of putting the probate Judges in the liquor business. But it is too well settled to call for discussion or the citation of authority that the Courts are not concerned with the wisdom or policy of legislation, except in so far as it may be determinative of legislative power. The power being conceded, the wisdom or policy of legislation is for the legislature alone. Hence, though we may differ with the legislature as to the propriety of the law, we must sustain its validity, if it be possible to do so, by any reasonable construction of the Constitution.

We cannot, therefore, allow our conclusion as to the power of the legislature to enact the law to be controlled, or even influenced, by our own notions of the propriety of imposing this duty upon the probate Judges, or by the fact that it may be so inconsistent with their ideas of the dignity of their office as to make it disagreeable or embarrassing to them, or even by the fact, if it be fact, that it may possibly tend to lessen the dignity of the office and the respect in which they are and should be held by all the people. All that was for the legislature, and it must be presumed that it was given due consideration. No doubt the known probity and integrity of the probate Judges of the State and the confidence which the legislature reposed in their judgment and discretion caused them to be selected, in the belief that the law would be fairly and discreetly administered by them, and that they would not allow its privileges to be abused.

The act does not create a new office, but merely imposes a new duty upon the probate Judges. It is, and from time immemorial has been, the constant practice of the legislature to impose new duties upon existing officers. *State v. Green,* 52 S. C. 520, 30 S. E. 683; *State v. Blease,* 95 S. C. 403, 79 S. E. 247. Since the adoption of the Constitution of 1895, numerous acts have been passed which imposed new or additional duties upon probate Judges, and even upon probate Courts. They have been required to issue marriage licenses and keep a record thereof in their respective counties, and, in a number of counties, the duties of master have been imposed upon the probate Courts. This shows that the legislature thought the change made in the organic law by the Constitution of 1895 was intended to remove the limitation upon its power, which the Court held, in *Davenport v. Caldwell,* was imposed by the Constitution of 1868.

The grave consequences that would ensue from a decision which would render all these acts null and void would cause us to pause, and require much more cogent reasons for such a decision than any that have been advanced. Of course, the legislative constructon is not binding upon the Courts; but it is entitled to weight, and to very considerable weight, where it has been acquiesced in for so long a time, and personal and property rights have been acquired under those statutes, which would be endangered or involved in doubt, if not destroyed, by such decision.

Judgment affirmed.