### 16345
### DILLON COUNTY v. MARYLAND CASUALTY CO. *ET AL.*
(59 S. E. (2d) 640)

*Mr. W. B. Hawkins,* of Dillon, and *McDonald & Mc-Gowan,* of Florence, *for Appellant,*

*Messrs. Willcox, Hardee, Houck & Palmer,* and *Royall & Wright* and *Emil T. Cannon,* all of Florence, *for Respondents,*

68

April 20, 1950.

Oxner, Justice.

On or about January 24, 1949, the County of Dillon brought this action against W. E. Allen, Probate Judge of said county, and the Maryland Casualty Company, surety on his official bond, for an accounting with respect to the fees on all marriage licenses issued, or which should have been issued, by him as Probate Judge, between February 5, 1948, and the date of the commencement of this action. The accounting is sought on the basis of $4.00 for each marriage license in accordance with Act No. 603 of the 1948 Acts of the General Assembly, 45 St. at L. 1612, the pertinent portion of which is as follows: "It shall be the official duty of the Judge of Probate of Dillon County, when requested, to perform marriage ceremonies during official office hours. He shall charge and collect Four ($4.00) Dollars for each and every marriage license issued by him regardless of whether such are issued during office hours or

not. He shall make no charge for issuing certified copies of marriage certificates. He shall make no charge for the performance of marriage ceremonies during office hours. Such services are official duties of the office and for which a salary compensation has been provided. Said Judge of Probate, and anyone acting in his behalf, shall collect said fees and they shall, together with all other fees and commissions received by said Probate Judge, be turned over monthly to the treasurer of said County."

It is alleged in the complaint that beginning on or about February 5, 1948, Allen, pursuant to a scheme "to collect for his own personal use the marriage license fees" to which Dillon County was entitled, "did obtain from another county or counties in the State of South Carolina large numbers of marriage licenses in blank, and in spite of his duty as Judge of Probate for Dillon County to issue a marriage license from Dillon County to every applicant for the same who was qualified to receive it and to collect therefor the sum of Four ($4.00) Dollars, and pay the same over to the Treasurer of Dillon County, the said W. E. Allen did issue to a large number of applicants, making application to him in Dillon County for a marriage license, a license or a purported license obtained from another county or counties in the State of South Carolina, and failed and neglected and refused to issue to such applicants a marriage license from the County of Dillon, and to collect therefor the sum of Four ($4.00) Dollars, and to turn the same over to the County Treasurer, as was required by law; and that the scheme and design whereby this was done was fraudulent in its nature and constituted malfeasance in office resulting in a financial loss to the County of Dillon in the amount of Four ($4.00) Dollars for each such marriage license which the said W. E. Allen failed to issue from the County of Dillon * * *."

Attached to the complaint as an exhibit is a schedule listing approximately 2700 marriages contracted during 1948 on licenses obtained from Darlington County. It is alleged

that in each instance the parties applied to Allen as Probate Judge for a marriage license but instead of issuing same from Dillon County, he or some one acting in his behalf used a license obtained from Darlington County. This schedule shows that Allen performed approximately 1800 of these marriages and his wife about 900.

Apparently the theory of the complaint is that in an effort to circumvent the requirements of Act No. 603, Allen delivered to a large number of persons licenses which he had obtained in blank from other counties, although the applications for same were made to him as Probate Judge of Dillon County. That ceremonies were then performed by him or some one else acting under his direction. Plaintiff seeks not only an accounting for all marriage license fees which should have been collected by Allen up to the time of the commencement of this action, but an injunction restraining him from hereafter using marriage licenses obtained from other counties when applications for same are made to him as Probate Judge of Dillon County.

The defendants demurred to the complaint upon the ground that the Act upon which it was based, Act No. 603, was unconstitutional. This appeal is from an order sustaining the demurrer and dismissing the complaint. The Court below held the Act unconstitutional in that (1) it was a special law where a general law could be made applicable, in violation of Article 3, Section 34, Subdivisions 9 and 10; (2) the title did not conform to the requirements of Section 17, Article 3; and (3) it was class legislation in violation of Article 1, Section 5. Several other constitutional objections raised by the demurrer were not passed upon.

For a proper understanding of the questions raised on this appeal, it is necessary to briefly refer to several provisions contained in the general law relating to marriage (Article 1, Chapter 164, of the 1942 Code). All persons desiring to contract matrimony within this State are required to obtain a license. In most counties the license is

issued by the probate judge, although in a few by the clerk of court. The fee for issuing same is $1.00 which in some counties is turned over to the county treasurer, while in others the officer issuing the license retains a part or all of the fee as his conmpensation. The probate judge is required to record the license, together with the certificate of the person who performs the ceremony, and index same in a book kept for that purpose. It is his duty to issue a certified copy of the license and certificate to any person upon the payment of a fee of 25¢. Only ministers of the gospel or accepted Jewish rabbis and officers authorized to administer oaths in this State may perform a marriage ceremony. The general law contains various other provisions and requirements relating to marriage but they are not pertinent to the questions before us.

The Act assailed in this proceeding was added as an amendment to the general statute fixing a fee of $1.00 for the issuance of a marriage license (Section 8558 of the 1942 Code). The effect of this amendment is to require the Probate Judge of Dillon County, when requested to do so, to perform marriage ceremonies during office hours without charge. This duty is not imposed on any other probate judge in South Carolina. This amendment further changed the general law by fixing the marriage license fee in Dillon County at $4.00, with no charge for obtaining a certified copy of the marriage certificate. In all other counties the fee is $1.00 for issuing a license and 25¢ for a certified copy.

The requirements in South Carolina concerning marriage are generally regarded as much less exacting than those of our sister state of North Carolina. This has resulted in an unusual number of marriage licenses being issued to nonresidents by probate judges in counties along the northern border of the state. These counties, including Dillon, have to some extent become Gretna Greens. Many of those applying for such licenses are married by the probate judge who issues same. The charges made or gratuities offered for such services have furnished quite a lucrative

source of income. The effect of the legislation under consideration is to deprive the Probate Judge of Dillon County of the very substantial income which he has been receiving from performing marriage ceremonies during office hours.

At the threshold of this discussion, we are confronted with plaintiff's contention that defendants cannot question the validity of Act No. 603. In *Greenville County Fair Association, Inc., v. Christenberry et al.,* 198 S. C. 338, 17 S. E. (2d) 857, 858, the Court quoted with approval the following from 16 C. J. S., Constitutional Law, § 82, page 173 : "As a general rule a public official whose rights are not adversely and injuriously affected by the operation of a statute or ordinance, or the particular feature of it complained of, may not raise the question of its constitutionality. Ordinarily, the mere interest of a public official, as such, is not sufficient to entitle him to question the validity of a statute; but, to entitle him to raise such question, he must show that his rights of person or property are adversely affected by the operation of the statute." In *Townsend v. Richland County et al.,* 190 S. C. 270, 2 S. E. (2d) 777, 781, the Court said: "One of the elementary doctrines of constitutional law is that one who invokes the power of the Court to declare an Act of the Legislature to be unconstitutional must show not only that his rights are affected, but must also show that the Act is unconstitutional as to him. The Court will refuse to determine whether or not a legislative Act is constitutional as to persons who are not shown by the agreed case to be affected."

The only portion of the statute affecting Allen personally is the provision requiring him to perform marriage ceremonies during office hours without charge. But it is well settled that the General Assembly may impose new or additional duties upon existing officers. *State v. Green,* 52 S. C. 520, 30 S. E. 683; *Bradford v. Richardson,* 111 S. C. 205, 97 S. E. 58; *Spartanburg County v. Pace et al.,* 204 S. C. 322, 29 S. E. (2d) 333. In *State v. Green, supra,* it was held that the General Assembly was

empowered to impose upon probate judges a new duty of acting as public guardian; in *Bradford v. Richardson, supra,* that the duty may be imposed upon probate judges of issuing permits for the importation of liquor; in *Spartanburg County v. Pace, supra,* that probate judges may be required to transmit to the Tax Commission copies of certain papers filed in their office relating to the administration of estates. In fact, it was pointed out in the *Bradford case* that the probate court is not a constitutional court in any county except Charleston, and, consequently, in all other counties the General Assembly had the power to abolish such a court entirely. The Court there said: "Since the adoption of the Constitution of 1895, numerous acts have been passed which imposed new or additional duties upon probate judges, and even upon probate courts. They have been required to issue marriage licenses and keep a record thereof in their respective counties, and, in a number of countis, the duties of master have been imposed upon the probate courts." [111 S. C. 205, 97 S. E. 62.]

Allen is a notary public and, of course, under Article 2, Section 2 of the Constitution, may hold that position along with that of probate judge. The argument is made that the Act denies him the right as notary public of performing marriage ceremonies during office hours, thereby depriving him of a very substantial source of income. It is said that this right is not denied to the other notaries public of South Carolina which is an unjust discrimination against the Probate Judge of Dillon County. It will be observed that the Act does not require said officer to perform marriage ceremonies as a notary public but as a part of his official duties as probate judge. The foregoing contention rests upon the false premise that this officer's rights may be violated by compelling him to devote his full time to the duties of his office. He is on a full time salary which the statute provides shall be in lieu of all fees. He is not in a position to complain of being required during office hours to refrain from engaging in any outside activities. In

some counties certain officers are forbidden to practice law, but it has never been suggested that such a provision violates any constitutional right. The propriety of imposing new duties on an officer after he has been elected without provision for additional compensation is a matter addressed to the legislative body and not to the courts. Wherever our sympathies may lie, we cannot permit these considerations to affect our decision.

It should be further stated that the portion of the Act just discussed is not involved in this controversy. Plaintiff does not seek in this action to recover money received by Allen for performing marriage ceremonies. The question here is his liability for failing to issue licenses and collect the fees required by the Act when applications for same were duly made to him as Probate Judge of Dillon County.

The fact that the duties mentioned in this Act are not imposed upon other probate judges does not have the effect of making it special legislation of a kind prohibited by Section 34, Article 3 of the Constitution. It is not infrequent that the duties connected with an office in one county differ to some extent from those of the same office in another county. To illustrate, in a few counties the duties of master are performed by the probate judge; in some the duties of the register of mesne conveyance are combined with those of the clerk of court; in many counties the tax collector performs duties formerly imposed upon the sheriff. Other illustrations will be found in the opinion of this Court in *Townsend v. Richland County, supra.*

We now turn to the other provisions of the Act which relate to an entirely different matter, namely, the fee to be charged in Dillon County for issuing a marriage license. If this provision were contested by a party injuriously affected, a serious question would arise as to whether it constituted special legislation in a field of general, state-wide importance. We intimate no opinion thereabout. It is sufficient to say that this feature of the Act is one with which Allen and his surety are not concerned. It was this officer's

duty to collect the amount fixed by the Act. He is on a salary basis and wholly unaffected by the fee charged. If a qualified person had applied to him for a marriage license, would he have been at liberty to say that the Act is unconstitutional and collect only the $1.00 fixed by the general statute? He occupies no stronger position when he is called upon to account for refusing to issue a license upon proper application therefor being made. It would be a dangerous practice to permit an officer charged with the responsibility of collecting a license or a tax to refuse to do so upon the ground that the statute imposing same was unconstitutional.

The foregoing conclusion is fully sustained by our decision in *Town of Belton v. American Employers Insurance Co.*, 199 S. C. 88, 18 S. E. (2d) 612. This was an action by the Town of Belton against the surety on the bond of the clerk and treasurer to recover losses sustained on account of the failure of said officer to collect certain water charges and license fees. The surety sought to attack the validity of the license ordinance. It was held that the surety could not do so because the rights of clerk and treasurer were not adversely affected by the operation of the statute. We do not think the case of *Harrison v. Lancaster,* 204 S. C. 318, 28 S. E. (2d) 835, relied on by defendants, is apposite. That case involved the constitutionality of a statute which attempted to take away a magistrate's constitutional power to appoint a constable to execute writs and processes issued by him. The Court held that the magistrate affected had a sufficient interest to warrant his attacking the constitutionality of this act because it sought to deprive him of a constitutional right.

The argument is also made that the Act contravenes that portion of Article 1, Section 4 of our Constitution which forbids the enactment of any law "respecting an establishment of religion or prohibiting the free exercise thereof." It is said that applicants for a marriage license may not desire a ceremony performed by a public

official or that a civil ceremony may be contrary to their religious belief, but under the Act such persons must pay for this service in order to secure a license. It is further suggested that this provision constitutes a discrimination against those applying for licenses in Dillon County. It does not appear that the defendants have any interest in this question. "No one can obtain a decision as to the invalidity of a law on the ground that it impairs the rights of others, for one attacking the constitutionality of a statute is not the champion of any rights except his own." 11 Am. Jur., Constitutional Law, Section 111, page 752.

It is our conclusion that no right of the Probate Judge of Dillon County was violated by imposing upon him the duty of performing marriage ceremonies during office hours. As aptly stated in *O'Shields et al. v. Caldwell et al.,* 207 S. C. 194, 35 S. E. (2d) 184, 190: "Public officers have no contract or property rights in their offices, and subject to special constitutional restrictions (not here present), the General Assembly has complete control of them." We further conclude that in this action for an accounting based on an alleged breach of duty by the Probate Judge in failing to collect licenses claimed to be due to Dillon County, neither the Probate Judge nor his surety may attack the validity of the Act fixing the fee to be charged for marriage licenses.

Nothing herein contained shall be construed as expressing any opinion upon the merits of this controversy. The case is here solely on a demurrer.

The other questions raised by the exceptions need not be determined.

The order appealed from is reversed and the case remanded, with leave to the defendants to answer or otherwise plead to the complaint within twenty days after the filing of the remittitur.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.