16538

BAKER v. ALLEN *ET AL.*

(66 S. E. (2d) 618)

*Messrs. W. B. Hawkins and Herbert Britt,* of Dillon, *and McDonald & McGowan,* of Florence, *for Appelants,*

*Mr. A. F. Woods,* of Marion, *for Respondent,*

August 28, 1951.

OxNER, Justice.

This is an action against the County of Dillon and the Probate Judge and Treasurer thereof for money had and received. It is claimed that plaintiff was unlawfully required

to pay $4.00 for a marriage license, although the proper fee was only $1.00. Recovery is sought for the difference of $3.00. The case is here on appeal from an order striking out, as sham and irrelevant, the answer of the County of Dillon and its Treasurer and awarding judgment for the plaintiff on the pleadings.

It is alleged in the complaint that on July 29, 1950, plaintiff and Lenore Cummings, both residents of Dillon County, applied to defendant W. E. Allen, as Probate Judge, for a marriage license, which was regularly issued on the following day and immediately thereafter the said Allen, acting in the capacity of Notary Public performed the marriage ceremony and delivered to the parties the usual certificate; that Section 8558 of the 1942 Code fixes a fee of $1.00 for a marriage license but the Probate Judge demanded and collected from the plaintiff the sum of $4.00, claiming that this was the proper charge under a special act relating to Dillon County, approved February 5, 1948, 45 St. at L. 1612; that the fee so collected was in due course turned over to the County Treasurer; and that $3.00 thereof was wrongfully collected and is now unlawfully held by the County of Dillon. It is further alleged that the act under which said amount was exacted is unconstitutional because (1) it is special legislation of the sort prohibited by Article 3, Section 34, of the Constitution, and (2) denies to the plaintiff the constitutional guaranty of the equal protection of the laws. Paragraph 7 of the complaint is as follows:

"That since the plaintiff could not obtain a marriage license otherwise, on July 30, 1950, he paid under protest to W. E. Allen, Judge of Probate of the County of Dillon, four dollars ($4.00), the sum demanded, and received for such payments a receipt reading as follows:

" 'Office of Probate Court
" 'Dillon County
" 'Walker E. Allen, Probate Judge
" 'Dillon, S. C.

" 'Received of David H. Baker four dollars ($4.00) for a marriage license issued to David H. Baker and Lenore Cummings on this the 30th day of July 1950. Three ($3.00) dollars of this amount is paid under protest by David H. Baker, claiming that he could get the marriage license in other counties for the sum of one ($1.00) dollar.

" 'The receipt of three ($3.00) is hereby acknowledged as paid under protest.

" 'W. E. Allen,

" 'W. E. Allen, Judge of Probate

" 'July 30, 1950.' "

The prayer of the complaint is to the effect that the act referred to therein be adjudged unconstitutional and that plaintiff have judgment against the defendants for $3.00.

Within due time the defendant W. E. Allen filed an answer admitting all of the allegations contained in the complaint and alleging that all in excess of $1.00 collected from the plaintiff was wrongfully and unlawfully exacted under the authority of the act approved on February 5, 1948, which was unconstitutional.

A joint answer was filed by the County of Dillon and J. B. Cole as Treasurer in which it was admitted that the parties applied to the defendant Allen, Probate Judge, for a marriage license on July 29, 1950, and on the following day were married by him. These defendants denied that any money had been wrongfully collected from the plaintiff. They asserted the act above mentioned was constitutional. In reference to Paragraph 7 of the complaint, heretofore quoted, the defendants alleged that they did not have knowledge or information sufficient to form a belief as to said allegations and, therefore, denied same.

Thereafter the plaintiff moved for judgment on the pleadings "on the ground that the answer of the defendant, W. E. Allen, admits the allegations of the complaint and joins in the prayer for relief, and the answer of defendants, County of Dillon and J. B. Cole, as Treasurer of the County of Dillon, fails to deny any material allegation of the complaint, fails to state any defense sufficient in law to the cause of action alleged by the plaintiff, and fails to tender any issue of fact in the case." The plaintiff also gave notice that if the above motion should be denied, he would thereupon move to strike out the answer of the County of Dillon and the Treasurer "as sham and irrelevant, and if such motion should be granted the plaintiff will then move again for judgment on the pleadings."

The foregoing motions were duly heard by the Resident Judge of the Fourth Circuit who struck the answer above referred to as sham and irrelevant and granted judgment on the pleadings in favor of the plaintiff for the sum of $3.00. He held that the cause of action stated in the complaint was not under a statute for the recovery of a tax or license paid under protest but was a common law action for money had and received; that the uncontroverted facts showed that the sum of $3.00 in controversy was paid involuntarily; that the answer of the County of Dillon and its Treasurer was "sham and irrelevant, manifestly false and interposed solely for the purpose of delay"; and that the act under which the Probate Judge collected said amount of $4.00 was unconstitutional upon the ground that it was a special law where a general law could be made applicable, in violation of Article 3, Section 34 of the Constitution.

The County of Dillon and J. B. Cole, as Treasurer thereof, have appealed from said order.

The general statute, Section 8558 of the 1942 Code, fixes a fee of $1.00 for the issuance of a marriage license. This section was amended by Act No. 603 of the 1948 Acts of the General Assembly, 45 St. at L. 1612. Under the terms

of this amendment, the Probate Judge of Dillon County is required to charge and collect $4.00 for each and every marriage license issued by him and to perform marriage ceremonies during office hours without charge when requested to do so.

In January, 1949, an action was brought by the County of Dillon against W. E. Allen, Probate Judge, and the surety on his official bond for an accounting with respect to the fees on all marriage licenses issued, or which should have been issued, by him as Probate Judge since the adoption of the above amendment. It was alleged in this complaint that Allen, pursuant to a fraudulent scheme to circumvent the requirements of the act passed in 1948, obtained from other counties in the state a large number of marriage licenses in blank which were issued to numerous persons applying to him as Probate Judge of Dillon County for a marriage license; and that he neglected and refused to issue to such applicants a proper license from Dillon County and collect therefor the sum of $4.00. Allen and his surety demurred to the complaint in that action on the ground that the 1948 Act was unconstitutional. This demurrer was sustained but upon appeal to this Court, the order sustaining the demurrer was reversed with leave to the defendants to answer. *Dillon County v. Maryland Casualty Co.*, 217 S. C. 66, 59 S. E. (2d) 640, 643. It was there held that it was the duty of Allen to collect the sum of $4.00 for each marriage license issued by him and that the constitutionality of the fee fixed by the act was "one with which Allen and his surety are not concerned." Consequently, we did not pass upon the constitutionality of the provision of the act fixing a fee of $4.00 for the issuance of a marriage license, stating that this could only be done in an action by a party injuriously affected. In due course the defendants in that action answered and the cause is now awaiting trial. The opinion of this Court in the above case was filed on April 20, 1950. The action now before us was commenced in August, 1950.

In determining whether the Court below erred in granting the motion to strike and awarding judgment on the pleadings, it is necessary to ascertain the essential elements of the cause of action stated in the complaint. It seems to be conceded by both respondent and appellants, and we shall therefore assume, that none of our statutes pertaining to a recovery of a tax or license paid under protest apply to the payment of a fee for a marriage license, and that respondent is restricted to a common law action for money had and received.

In 33 Am. Jur., Licenses, Section 88, page 396, it is stated: "In accordance with the general rule governing voluntary payments, and the general rule in respect of voluntary payments of illegal taxes, license taxes, if voluntarily paid, cannot be recovered back on the ground of the illegality of the tax; if there is no coercion or mistake of fact, the case falls within the general rule of voluntary payments and this is generally held to be true by the weight of authority although the payment is made under a mistake of law. Under this rule the illegality of the demand paid constitutes of itself no ground for relief, but there must be, in addition, some compulsion or coercion attending its assertion which controls the conduct of the party making the payment." Our case of *Robinson v. City Council of Charleston,* 2 Rich. 317, 45 Am. Dec. 739, is cited in support of the foregoing general rule.

The strict rule above mentioned has undoubtedly worked an injustice in many instances. The hardships incident to its rigid enforcement have been mitigated in a number of states by the enactment of statutes providing for the recovery of illegal taxes or licenses. The modern tendency is toward a relaxation as to what is essential to constitute duress. In *Lamborn v. Dickinson County Com'rs,* 97 U. S. 181, 24 L. Ed. 926, the Court said: "It is settled by many authorities that money paid by a person to prevent an illegal seizure of his person or property by an officer claiming authority

to seize the same, or to liberate his person or property from illegal detention by such officer, may be recovered back in an action for money had and received, on the ground that the payment was compulsory or by duress or extortion. Under this rule, illegal taxes or other public exactions, paid to prevent such seizure or remove such detention, may be recovered back, unless prohibited by some statutory regulation to the contrary."

Although there is quite a diversity of opinion as to the circumstances necessary to show compulsion or coercion, it is uniformly recognized that to sustain a recovery in an action of this kind there must be an involuntary payment of the tax or license sought to be recovered. In *City of Columbia v. Peurifoy, Receiver,* 148 S. C. 349, 146 S. E. 93, 94, this Court said: "We take it to be a well-established principle of law that one who voluntarily pays taxes to a state or one of its political subdivisions cannot recover the same, in the absence of statutory provisions specifically authorizing such recovery."

In an action at common law for money had and received, protest alone does not preserve the right to recover if the circumstances show that there was no compulsion or coercion. In other words, there is no magic in the act of paying under protest and that fact alone, unaccompanied by other circumstances, is insufficient to convert a voluntary payment into an involuntary one so as to authorize recovery. "There are, no doubt, cases to be found in which the language of the court, if separated from the facts of the particular case under consideration, would seem to imply that a protest alone was sufficient to show that the payment was not voluntary; but on examination it will be found that the protest was used to give effect to the other attending circumstances." *Union Pacific Railroad Co. v. Board of County Commissioners of the County of Dodge,* 98 U. S. 541, 25 L. Ed. 196. Language of the nature mentioned, by way of *dicta,* will be found in our own case of

*Sutton v. Town of Fort Mill,* 171 S. C. 291, 172 S. E. 119. Of course, the fact that a license or tax was paid under protest is a circumstance to be considered in determining whether the payment was voluntary.

It follows from the foregoing views that one of the cardinal issues in this case is whether respondent paid the alleged illegal excess of $3.00 involuntarily. The burden of proof is upon him, as all payments are presumed to be voluntary until the contrary is made to appear. In *Moody v. Stem,* 214 S. C. 45, 51 S. E. (2d) 163, 169, it was said: "Where it is sought to recover the amount of an overcharge, it is incumbent upon the plaintiff to allege and prove some fact or facts which show that the money was paid under circumstances deemed to be involuntary." Respondent alleges in Paragraph 7 of his complaint that since he could not obtain a marriage license otherwise, he paid the sum of $4.00 demanded of him "under protest". This is denied by appellants. An issue of fact is thus raised which must be determined on the trial of the case. Moreover, as heretofore stated, the fact that said amount was paid "under protest" does not conclusively show that it was paid involuntarily. The vital issue is—did the payment by respondent constitute an involuntary payment within the purview of the rule heretofore set out? This question cannot be answered on the pleadings.

Respondent contends that the question is controlled by *Levy v. Roberts,* 1 McCord 395; *Murray v. Moorer,* Cheves 111, and *Alston v. Durant,* 2 Strob. 257. In the first two cases it was held that a person paying money to a sheriff on an execution cannot be considered as paying it voluntarily. In *Alston v. Durant,* a sheriff exacted certain unlawful charges as a condition precedent to the delivery of plaintiff's runaway slave. This payment was held not to be voluntary and the plaintiff was allowed to recover. On the other hand, appellants say that the case is governed by *Robinson v. City Council of Charleston, supra,* 2 Rich. 317, 45 Am. Dec.

739. In..that case the City of Charleston passed an illegal ordinance imposing on non-residents a higher price for badges for laborers and licenses for drays employed within the city than upon residents. The plaintiff, a non-resident, paid the increased price and then brought an action to recover back the excess so paid. It was held that the payment was voluntary and that the action could not be maintained.

The fact that recovery was denied in the *Robinson case* but permitted in the three cases relied on by respondent illustrates the general rule that whether duress or compulsion exists in a particular transaction is ordinarily a question of fact depending on the situation of the parties and all the surrounding circumstances. We cannot say to what extent these cases are applicable to the instant case until the facts are known.

We now come to the question of whether the Court below erred in holding that appellants' denial of Paragraph 7 of the complaint was sham and false. "A sham answer is one good in form, but false in fact, and not pleaded in good faith; being a mere pretense, set up in bad faith and without color of fact." *Etiwan Fertilizer Co. v. Johns,* 202 S. C. 29, 24 S. E. (2d) 74, 76. It was there held that the power to strike a pleading as sham "will be very sparingly exercised, and only where the pleading is manifestly false, interposed to delay and defeat the plaintiff's action, and only in cases free from doubt." This is true for the reason that the truth or falsity of a pleading should ordinarily be determined by a jury, with full opportunity for producing, examining and cross-examining the witnesses. Accordingly, it is well settled that a motion of this kind is not looked upon with favor.

It certainly cannot be said that appellants' answer is manifestly false and not interposed in good faith. It is true that at the hearing of the .motion to strike, the original receipt, a copy of which is set forth in Paragraph ·7 of the complaint, was produced but it is not conclusive of

the facts therein stated. Appellants are entitled to cross-examine the Probate Judge, who signed this receipt, as to the assertions contained therein and the circumstances under which it was prepared and delivered.

For the foregoing reasons, we think the Court erred both in striking out appellants' answer as sham and irrelevant and in granting judgment on the pleadings. In view of the foregoing conclusion, it is unnecessary to pass on the constitutionality of the act under which the money in controversy was collected. The validity of that act need not be determined unless respondent shows an involuntary payment. Our refusal now to pass upon that question is sanctioned by the well established rule that ordinarily the courts will not pass upon a constitutional question unless a decision upon that point becomes necessary to the determination of the cause. *DeTreville v. Groover, S. C.,* 65 S. E. (2d) 232, and cases therein cited.

There only remains for consideration a subsidiary question. During the argument on the motion heretofore discussed, counsel for appellants asked, in the event the motion to strike was granted, for permission to file an amended answer but did not disclose to the Court the nature of the proposed amendment. The Court refused the motion to amend. Ordinarily, as pointed out in the recent case of *Mack v. Plowden,* 217 S. C. 112, 60 S. E. (2d) 57, amendments to pleadings should be liberally allowed in furtherance of justice but until the nature of the proposed amendment is known, it cannot be properly determined whether appellants' motion should be granted. As the case must be remanded for trial, this motion may be renewed and if made, should set out the particulars in which it is sought to amend.

The order appealed from is reversed.

FISHBURNE and STUKES, JJ., concur.

BAKER, C. J., and TAYLOR, J., dissent.

BAKER, Chief Justice (dissenting).

The statement in the main opinion correctly sets forth the proceedings in the Circuit Court, but I find myself in disagreement as to the issues thereby raised, and the disposition thereof.

The pleadings in the case, in my opinion, raise only the issue whether the marriage license was paid under protest, and whether Act 603, requiring the payment of $4.00 for a marriage license in Dillon County, is constitutional. The heart of the matter is contained in paragraph seven of the complaint, where it is alleged that the sum of $4.00 was paid under protest, and the receipt for the amount is set forth, and paragraph 5 of the answer of the appellants, to the effect that they do not have information sufficient to form a belief as to the truth thereof, and, therefore, deny the same.

The appellants in the lower court took the position, generally, that the respondent, having alleged the payment under protest, was required to prove it, and the denial, on information and belief, of payment under protest presented a factual issue for determination upon the taking of testimony thereabout. The respondent, on the other hand, took the position, generally, that the allegations in paragraph 7 as to payment under protest were not made as a necessary prerequisite to recovery, but were made to show the involuntary character of the payment, and the right to recover it as for money had and received. In other words, the basis of the contention of the respondent below was that the payment under protest was bottomed on his inability to obtain a marriage license otherwise, and not because he may have been required to do so in order to recover the alleged excess charge of $3.00.

It is admitted that Allen, the Probate Judge, was compelled to collect $4.00 for a marriage license issued in Dillon County. *County of Dillon v. Maryland Casualty Co.*, 217 S. C. 66, 59 S. E. (2d) 640. It must further be admitted that respondent could not lawfully marry without a license, and that he could not procure a license in Dillon County, where

he lived, without paying $4.00 therefor. It seems to follow inescapably that if he paid $4.00 for a marriage license, under the conditions mentioned, it was under such circumstances of duress as to be involuntary, and did not require any formal protest. The protest by respondent could not avail to prevent the collection, if the license was to be obtained. The parties were not on an equal footing. In order to comply with the law, respondent had to meet the demand for payment of $4.00 for the license.

In *Swift Courtney & Beecher Co. v. United States*, 111 U. S. 22, 4 S. Ct. 244, 247, 28 L. Ed. 341, the plaintiffs, who were manufacturers of matches and furnished their own dies for revenue stamps used by them, and were thereby entitled to a commission of ten per cent on the price of the stamps, accepted for a long period of time their commissions in stamps at their face value in lieu of money, the stamps, of course, being worth to them only ninety cents on the dollar. They did this because the Treasury Department would pay in no other manner. It was held that the apprehension of being stopped in their business by noncompliance with treasury regulation was a sufficient moral duress to make plaintiffs' payment for stamps on the basis fixed by the Treasury Department involuntary. Mr. Justice Matthews, delivering the opinion of the Court, said:

"* * *. The question is whether the receipts, agreements, accounts, and settlements made in pursuance of that demand and necessity were voluntary in such sense as to preclude the appellant from subsequently insisting on its statutory right. We cannot hesitate to answer that question in the negative. The parties were not on equal terms. The appellant had no choice. The only alternative was to submit to an illegal exaction or discontinue its business. It was in the power of the officers of the law, and could only do as they required. Money paid, or other value parted with, under such pressure, has never been regarded as a voluntary act within the meaning of the maxim, *volenti non fit injuria*."

The Court, in the course of its opinion, further quoted with approval from a Vermont case, *Beckwith v. Frisbie*, 32 Vt. 559-566, where it was said: "To make the payment a voluntary one, the parties should stand upon an equal footing." Immediately following this quotation, the opinion states: "If a person illegally claims a fee *colore officii*, the payment is not voluntary so as to preclude the party from recovering it back."

A consideration of the case of *Union Pacific Railroad Company v. Board of County Commissioners of the County of Dodge*, 98 U. S. 541, 25 L. Ed. 196, cited and quoted from in the opinion of Justice Oxner, shows lack of application to the admitted factual situation here involved. There was no element of compulsion present. All that appeared was that certain taxes claimed to be due by the County had been charged on the tax lists to the Railroad, and had become delinquent. Before any active steps whatever had been taken to enforce their collection, the Railroad Company presented itself at the Treasurer's office, and in the course of business paid in full everything that was charged against it, accompanying the payment, with a general protest. No element of compulsion was present in that case, such as the necessity of procuring a marriage license in order to be legally married.

The old case of *Robinson v. City Council of Charleston*, 2 Rich. 317, is found not to be apposite. It appears from the opinion that the plaintiff, suing for return of license fees paid to the City for several years, had paid the money without "objection or reservation"; that he was not without a legal remedy to vindicate his rights; and was under no coercion to abide by the ordinance under which he paid the money.

It has been stated to be the law of this state that money paid to a sheriff on an execution cannot be considered as a voluntary payment. *Levy v. Roberts*, 1 McCord 395. It is likewise certain that if money is exacted by a sheriff *colore officii*, as a condition of releasing property of a party held

by the sheriff, such a payment is not voluntary in the eyes of the law. *Alston v. Durant,* 2 Strob. 257. I cannot see that a payment to an officer of a county for a marriage license, when the license is required as a condition of lawful marriage, and the Judge of Probate is armed with the command of the Legislature to collect it, is in any different category. If an officer of the law refuses to render a service, to which another is entitled, such as the issuance of a marriage license, except under the payment of an amount over the sum he has a legal right to demand, payment of the amount demanded *under such circumstances* is not voluntary; and the excess may be recovered in an action for money had and received.

. I find myself in agreement with the statement of this Court in *Sutton v. Town of Fort Mill,* 171 S. C. 291, 172 S. E. 119, to the effect that, under the general provision of law, payment under protest will protect the payer from the charge of having made a voluntary payment, and permits a suit for money had and received. Especially is such law applicable when a person is under compulsion of making the payment to comply with a legal requirement such as procuring a marriage license, and is denied the license without payment of the amount demanded. I admit that the statement in the *Sutton case* is *dicta,* but it is sound as applied to the circumstances prevailing in this case. Attention is again called to the fact that in *Robinson v. City Council, supra,* the payment was without objection or reservation.

The 6th exception of the appellants challenges the propriety of striking out their answer and granting judgment on the pleadings by reason of the inapplicability of Section 2808, 1942 Code of Laws. The appellants contend in that exception that the Circuit Judge should have held that this Section applies to all license taxes going into the county treasury; and in their brief, the following appears: "The case now before this Court we think definitely comes within the reasonable purpose of Section 2808, because the action is one against the County Treasurer to recover an amount paid by way of a license tax. But we are aware that this

section has been rather strictly construed, and since this payment does not relate to an amount charged on the books of the County Treasurer, it probably does not come within the letter of Section 2808."

This but emphasizes the statement first made herein to the effect that the pleadings raise only the issue whether the marriage license was *paid under protest* and as to the constitutionality of the Act. It is nowhere contended by the appellants in their exceptions, that, if the payment was made under protest, such in and of itself would not be sufficient to authorize the maintenance of the action. Exception 5 is the only one in which the word "voluntary" is used, and there it is used only *as distinguished* from being paid under protest. The subject of the involuntary nature of the payment only arises in connection with the contention of the respondent that it was unnecessary to protest, under the circumstances prevailing, because the payment under the circumstances was an involuntary one. There is no exception, upon which the appellants would be entitled to maintain in this Court, that if the payment was actually made under protest, the respondent would not be entitled to recover. This is directly in the face of their contention that payment under protest is the determining factor.

This brings us to the question as to whether or not the allegations in the answer to the effect that appellants did not have information sufficient to form a belief as to the truth of the statements contained in paragraph seven made it necessary for the Circuit Judge to refuse to strike the answer as sham and frivolous. Upon the hearing of this motion, the respondent offered in support of the motion the original receipt issued by the Probate Judge to him for the $4.00 paid for the license, which receipt reads as follows:

"Office of Probate Court

"Dillon County

"Walker E. Allen, Probate Judge

"Dillon, S. C.

"Received of David H. Baker four dollars ($4.00) for a marriage license issued to David H. Baker and Lenore Cummings on this the 30th day of July 1950. Three ($3.00) dollars of this amount is paid under protest by David H. Baker, claiming that he could get the marriage license in other counties for the sum of one ($1.00) dollar.

"The receipt of three ($3.00) dollars is hereby acknowledged as paid under protest.

"W. E. Allen,

"July 30, 1950.            Judge of Probate."

The appellants did not offer objection to the introduction of this receipt, or its consideration by the Circuit Judge. They did not, upon the hearing, contest its validity or that it in any manner was not exactly what it purported to be, viz., a payment of $3.00 thereof under protest. Bearing in mind that the Probate Judge, who issued the receipt (an officer of the appellant, County of Dillon) filed an answer in this cause admitting that the said amount was paid under protest, and that the receipt as set forth in the complaint was delivered to the respondent, the Circuit Judge was fully warranted in considering the said receipt, finding it to be valid, and striking the answer as sham and irrelevant. It is settled law that when a motion is made to strike an answer as sham and irrelevant, and the Circuit Judge, without objection, receives affidavits, exhibits or testimony, he is authorized to strike an answer if it is found from such showing that the answer is mainifestly untrue and interposed for delay, and therefore sham and frivolous. A motion to strike out as sham presents a question of fact to be determined by the court upon affidavits or in such other manner as the court may direct. *Union Guano Co. v. Garrison,* 130 S. C. 404, 126 S. E. 133; *Germofert Mfg. Co. v. Castles,* 97 S. C. 389,

81 S. E. 665; *Ocean-Forest Co. v. Woodside,* 184 S. C. 428, 192 S. E. 413; *Etiwan Fert. Co. v. Johns,* 202 S. C. 29, 24 S. E. (2d) 74.

When the original receipt for the license fee indicating that it was paid under protest, was offered, the duty devolved upon the appellants to object to its consideration, or to make some kind of showing to the effect that it was not valid or what it purported to be. This they did not do. I, therefore, am of the opinion that the motion to strike the answer as sham and irrelevant was properly granted.

This leaves two questions to be decided, to wit, whether Act No. 603 of the 1948 Acts fixing a charge of $4.00 for a marriage license in Dillon County is unconstitutional, in that it is in violation of Article III, Section 34, of the Constitution of South Carolina; and whether the Circuit Judge was in error in refusing the appellants' motion to be allowed to file an amended answer.

Upon these questions, I find myself in agreement with the conclusions of the Circuit Judge as set forth in his order holding the Act to be unconstitutional, and refusing the motion to allow the appellants to serve an amended answer, and therefore adopt that portion of his order reading as follows:

"It is contended by the plaintiff that Act No. 603 is unconstitutional in that (1) it is a special law violating Article III, Section 34, of the Constitution of South Carolina; and (2) it denies to the plaintiff, a resident and citizen of Dillon County, the equal protection of the laws in violation of Article I, Section 5, of the Constitution of South Carolina and the Fourteenth Amendment of the Constitution of the United States.

"The only portion of Act No. 603 brought into question in this action is that portion relating to the fee required for a marriage license in Dillon County, and the scope of this order is confined thereto.

"Act No. 603 attempts to fix the fee for a marriage license in Dillon County at Four ($4.00) Dollars. Section 8558, 1942 Code of Laws, is a general law, of statewide application, and fixes the fee for a marriage license in every county of South Carolina at One ($1.00) Dollar.

"Article III, Section 34, Subdivision 9, of the South Carolina Constitution, as amended in 1935, is as follows:

" 'In all other cases, where a general law can be made applicable, no special law shall be enacted: Provided, That the General Assembly may enact local or special laws fixing the amount and manner of compensation to be paid to County Officers of the several counties of the State, and may provide that the fees collected by any such officer, or officers, shall be paid into the treasury of the respective counties.'

"The proviso to subdivision 9, of Article III, Section 34, of the South Carolina Constitution relating to the power of the General Assembly to enact local or special laws fixing the amount and manner of compensation of county officers has no application here. Act No. 603 does not, insofar as the Four ($4.00) Dollar charge for a marriage license is concerned, relate to the amount or manner of compensation of county officers, but relates solely to the cost of a marriage license.

"This Act in question is not a revenue measure. It will be found that Section 8557 requiring marriage licenses is contained in Chapter 164, Article I, 1942 Code of Laws (Secs. 8556-[8571-1]) all of which is devoted to the subject of marriages and their regulation. In considering together all of the provisions of this article of the Code it is impossible to escape the conclusion that the legislative purpose in enacting these provisions, including those requiring marriage licenses, was not to raise revenue but to regulate and place restrictions around marriages in the interest of the general welfare of the public. Marriage is a matter of statewide concern and of general interest. Our civilization

is largely built around the institution of marriage and the home. It is clear that it was these considerations that prompted the passage of Secs. 8556-[8571-1], supra, requiring marriage licenses in South Carolina, and not considerations of revenue.

"The mere fact that the money collected from the licenses may go into public treasury, and may be used for school or other public purposes, is by no means conclusive as to the nature of the charge exacted. The difference between this case and the case of *State v. Touchberry,* 121 S. C. 5, 113 S. E. 345, 346, and *Anderson v. Page,* 208 S. C. 146, 37 S. E. (2d) 289, is shown by the following from the *Touchberry case* in discussing the statute there involved:

" 'The only object of the statute and its manifest intent was to raise revenue for road purposes in Clarendon county. It was clearly enacted in the exercise of the taxing power.'

"While in those cases the statutes under question were held to have as their only object the raising of revenue, in the present case the object is not the raising of revenue but the regulation of marriage, a matter of statewide concern.

"Other considerations prompt the conclusion reached. If the marriage license fee may be varied throughout the forty-six counties of this State, as is now sought to be done under Act No. 603, then the requirement of the general law of this State may as justifiably be varied so as to eliminate the necessity of obtaining a marriage license in any county desiring to do so. If the General Assembly may raise the marriage license fee in Dillon County, it can with equal authority reduce it below the fee of One ($1.00) Dollar now set by Section 8558, in any county of the State. The sale of marriage licenses would then be conceivably placed on a competitive basis among the several counties of the State. In fact, in the brief of counsel for the defendants, it is argued that parties may now get married in Dillon County at a cheaper rate than in other counties of the State and that it is 'to the advantage of the greater majority of the

people to get married in Dillon County.' I do not believe that the public interest will be served by opening 'bargain counters' over the State of South Carolina in the sale of marriage licenses.

"It was, no doubt, the public interest in marriage, and the statewide concern thereabout, that prompted the enactment of the general laws regulating the subject. Those same considerations impel the striking down of those provisions of Act No. 603 varying the charge for a marriage license in Dillon County. It seems to me that the broad, sound public policy dictating the uniform regulation of marriage throughout the State, and the enactment of the general law pursuant thereto removes the subject of marriage and the fee to be charged for marriage licenses from the field of permitted special legislation.

"Having concluded that Act No. 603, in the particular stated, violates the provisions of Article III, Section 34, of the Constitution of South Carolina, it becomes unnecessary to consider its unconstitutionality on other grounds.

\* \* \*

"Upon argument before me, counsel for the defendants asked, in the event the motion to strike the answer be granted, for permission to file an amended answer; but it was not stated in what respect it was desired to amend, and consequently there is nothing before the Court from which it could be fairly concluded that such amendment would be in furtherance of justice, so as to move the Court, in the exercise of its discretion, to grant the right to amend. A very similar situation arose in the case of *Marion County Lumber Co. v. Hodges,* 100 S. C. 477, 85 S. E. 49. Furthermore, under the facts and circumstances of this case, as made to appear to the Court, I do not think that an amendment would be in furtherance of justice. After carefully considering the matter, and in the exercise of my discretion, I have, therefore, concluded that the request to amend should be refused, and it is so ordered."

The value of a dollar in South Carolina has indeed reached a new low when the average citizen of this State has to testify under oath that he did not voluntarily pay $4.00 for something which he believed or knew that he had a legal right to procure upon the payment of $1.00 therefor, and when at the time of the payment of the $4.00 such citizen requested and was given a receipt for the payment of the $4.00 from the officer demanding such amount specifically stating that it was being paid under protest in so far as $3.00 thereof was concerned.

It is my opinion that the order appealed from should be affirmed.

TAYLOR, J., concurs.